19343

The STATE, Appellant, v. Jeryl BEST et al., Respondents.

(186 S. E. (2d) 272)

Lewis J., did not participate.

*Messrs. Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr.,* and *E. N. Brandon, Asst. Attys. Gen.,* Columbia, *for Appellant,* cite:

*Messrs. Ernest B. Hinnant,* of Florence, and *Vinton D. Lide,* of Hartsville, *for Respondents,* cite:

January 4, 1972.

Moss, Chief Justice:

The record reveals that Jeryl Best, L. Delmar Kirven, and James Dewey Marsh, the respondents herein, along with others, were indicted at the 1971 February Term of the Court of General Sessions for Darlington County of offenses which arose out of an incident which occurred at the Lamar Schools in Lamar, South Carolina, on March 3, 1970. This indictment contained three counts charging (1) common law riot, (2) malicious destruction of personal property and, (3) assault and battery of a high and aggravated nature. Best was charged on counts one and two, Kirven was charged on all three counts and Marsh on count one of the indictment.

The three respondents were tried and convicted, on February 21, 1971, at the Court of General Sessions for Darlington County. Best and Marsh were convicted of the offense of riot and Kirven was convicted of the offenses of riot and assault and battery of a high and aggravated nature. The respondents were not sentenced immediately after the return of the verdicts. The trial judge decided to defer sentencing them until a later date and sentences were thereafter imposed on each of the respondents on March 8, 1971, in Dillon, South Carolina, during the March Term of the Court of General Sessions for said county.

Best was sentenced to the service of two years imprisonment and the payment of a fine in the amount of $1,000 provided that upon the service of six months of said sentence and the payment of the fine, that the balance of the sentence was suspended and he was to be placed on probation for a period of two years. Kirven, on the charge of riot, was sentenced to the service of twelve months and the payment of a fine provided upon the service of four months or the payment of the fine that the aforesaid sentence was suspended and he was to be placed on probation for three years. Kirven was sentenced, on the charge of assault and battery of a high and aggravated nature, to the service of a term of two years provided that upon the service of eight months the balance of the aforesaid sentence was to be suspended and he was to be placed on probation for a period of three years. This sentence was to be served consecutive to the sentence for riot, and with the probation sentence to be concurrent with that imposed for riot. Marsh was sentenced to the service of eighteen months and the payment of a fine of $1,000, provided upon the service of four months and the payment of a fine of $500 his sentence was to be suspended and he was placed on probation for a period of two years.

The record shows that on Monday, March 15, 1971, the trial judge returned to Darlington County for the purpose of presiding over the Court of Common Pleas, at which

time and according to a statement prepared by the said trial judge, certain citizens wanted to know if he could and would discuss further the cases of Best and Marsh. Inquiry was made as to whether the trial judge would be willing to help them with their work if no appeal was filed and they determined to serve their sentences. The trial judge suggested that each present a letter with his request which would be considered. The trial judge agreed to keep the case as it related to Best and Marsh "under review" and agreed to reduce their "jail time further, depending on results." He further stated that on or about April 15, 1971, he expressly promised the attorney for Kirven that he "would retain jurisdiction" of the case as to him and "would modify and reduce the sentence after several months if all went well."

The record shows that on March 17, 1971, Best and Marsh, by letters, without any notice to The State, asked for permission to be released from confinement for specific periods to carry on their business occupations during the term of their imprisonment. On March 17 and 18, the trial judge amended, respectively, the sentences which he earlier had imposed on Best and Marsh. Best's sentence was amended by allowing him, during the period of his imprisonment, to, be released from confinement at 12:00 noon each Friday and to remain free until the following Monday morning at 7:00 a.m. The sentence of Marsh was amended to allow him to satisfy the term of his imprisonment, to which he had originally been sentenced, by serving each day in jail for a five week period, during which he was to be released from confinement between the hours of 12:00 noon on Saturday and 10:00 p.m. Sunday and thereafter allowed to work at his job on a forty hour basis each week and during this time he shall make a three or four day week of confinement until the balance of his time is completed.

The record shows that on May 28, 1971, Judge Wade S. Weatherford, Jr., who was the presiding judge at the time of the trial and sentencing of the respondents, returned

to Darlington County and, without notice to The State, directed the sheriff of said county to bring the three respondents before him and changed the sentences of Best and Marsh by immediately suspending the unserved portions of their terms of imprisonment and by reducing Best's probation to one year and Marsh's to six months. The sentences of Kirven were ordered to run concurrently instead of consecutively and they were to be suspended upon the service of six months imprisonment rather than twelve. The trial judge required each of the respondents to pay the fines previously imposed.

The State prosecutes this appeal from the orders of Judge Weatherford modifying the sentences imposed upon the respondents.

The practical question for decision here is whether the trial judge had jurisdiction to change or suspend the sentences imposed by him on the respondents on March 8, 1971.

Our Constitution of 1895, Art. 5, Sec. 13 thereof, provides that the State shall be divided into as many Judicial Circuits as the General Assembly may prescribe; and in Art. 4, Sec. 14, it is provided that the judges of the Circuit Courts shall interchange circuits with each other, and the General Assembly shall provide therefor.

The General Assembly in pursuance of Art. 5, Sec. 13, of the Constitution, divided the State into sixteen Judicial Circuits and provided that the fourth circuit should be composed of the counties of Chesterfield, Darlington, Marlboro and Dillon. Section 15-261, of the 1962 Code, as amended.

The General Assembly in compliance with Art. 5, Sec. 14, of the Constitution, enacted into law Section 15-129 of the Code which provides as follows:

"Between the first and fifteenth day of December in each year the Chief Justice or, in his absence or inability to attend, the senior associate justice shall form a roster of the circuit judges of the several circuits in order to arrange

a regular and continuous assignment and interchange of circuits among such judges and make an order assigning the several circuit judges to hold the several circuit courts in all of the circuits of the State for the whole of the succeeding year in such order as will effect a continuous interchange of circuits according to such numerical series."

In compliance with Section 15-129 of the Code, the Chief Justice of this Court, by an order dated December 1, 1970, assigned for the First Session of the respective Circuits, commencing on January 1, 1971, the Honorable Wade S. Weatherford, Jr., Judge of the Seventh Circuit, to hold the courts of the Fourth Circuit. It was also provided in said order that the Second Session of each Circuit, commencing on May 1, 1971, would be held by the judge of that Circuit. By the aforesaid order, Judge Wade S. Weatherford, Jr., was the presiding judge of the Fourth Circuit from January 1, 1971 until April 30, 1971, and from May 1, 1971 until August 31, 1971, he was the resident and presiding judge of the Seventh Circuit.

The General Assembly of this State, by Section 15-226 of the Code, provided for the holding of the terms of court in the Fourth Circuit. It was provided that a Court of General Sessions for Darlington County should be held on the third Monday in February, this being February 15, 1971. A Common Pleas Court for Dillon County was scheduled for the Fourth Monday in February or February 22, 1971. It was also provided that a General Sessions Court would be held in Dillon County on the second Monday in March, which was March 8, 1971. A Court of Common Pleas was scheduled for the third Monday in March at Darlington, this being March 15, 1971.

The record shows that the trial judge deferred sentencing the respondents until March 8, 1971 in Dillon County. Neither The State nor the respondents have raised any question concerning the time and place of the pronouncement of the sentences in this case. Both The State and the respondents acquiesced in the court's action and neither can now

complain. *Shillito v. City of Spartanburg,* 215 S. C. 83, 54 S. E. (2d) 521. However, we call attention to the statement of the trial judge that "the court did not retain jurisdiction as such, or transfer jurisdiction to any other court term or extend the term of court then ending." The trial judge stated that he postponed the sentencing of the respondents out of consideration for the welfare and safety of the jury that had convicted them.

The term of court at which the respondents were convicted terminated on February 21, 1971 and a new term of Court of Common Pleas commenced, pursuant to Section 15-266 of the Code, in Dillon County on February 22, 1971. The expiration of the term of Court of General Sessions at which the respondents were tried and convicted terminated by operation of law because of the commencement of another term of court in Dillon County in the same judicial circuit. Cf. *Stroup v. Duke Power Co.,* 216 S. C. 79, 56 S. E. (2d) 745.

Under our judicial system the presiding judge in the Circuit Court loses jurisdiction with the adjournment of the term. *State v. Thompson,* 122 S. C. 407, 115 S. E. 326. It follows that after the adjournment of the term of court at which sentence is imposed the judge is without authority to change, amend or modify it. 24 C. J. S. Criminal Law, § 1590, p. 607; 21 Am. Jur. (2d) Criminal Law, Section 569, p. 537. Cf. *Long v. Stanley,* 200 Ga. 239, 36 S. E. (2d) 785; *Stockton v. State,* 70 Ga. App. 17, 27 S. E. (2d) 240, and the cases therein cited, and *State v. Lawrence,* 264 N. C. 220, 141 S. E. (2d) 264.

The term of court at which respondents were tried, convicted and sentenced having expired, Judge Weatherford was without authority, on March 17 and 18, 1971, to alter, amend or modify his previous sentences in any way. On these dates the respondents were subject to prison administrative control under the law as enacted by the legislature. The orders allowing partial release from confinement for

specific periods to carry on their business occupations were a nullity.

Judge Wade S. Weatherford, Jr., was duly assigned and empowered to hold the courts in the Fourth Circuit from January 1, 1971 until April 30, 1971. After the latter date, he was assigned and designated to hold the courts in the Seventh Circuit, of which he was the resident judge, from May 1, 1971 until August 31, 1971. Not withstanding the termination of Judge Weatherford's assignment to hold the courts in the Fourth Circuit, he returned to Darlington on May 28th, 1971, and without notice to The State or counsel for the respondents, and apparently upon his own motion, had the three respondents brought before him and changed their sentences in the manner hereinbefore recited.

It is the position of The State that the order of Judge Weatherford changing the sentences of the respondent should be reversed upon the ground that he had lost jurisdiction to grant such order by reason of the expiration of his assignment to the Fourth Circuit and having left said circuit and returned, pursuant to assignment, to the Seventh Circuit.

In *Shillito v. City of Spartanburg,* 215 S. C. 83, 54 S. E. (2d) 521, we said:

"Ordinarily, a judge in our system of rotation of judges, duly assigned and empowered to hold court in another circuit, must exercise his judicial powers while within the territorial boundaries of such circuit. *Burns v. Babb,* 190 S. C. 508, 3 S. E. (2d) 247. To this general statement of the rule there are some exceptions. Thus, it has been held that the visiting judge, after the adjournment of court in the designated circuit, may render his decision in a cause tried before him, or pass upon a motion heard by him, even after he has returned to his home circuit. *Stokes v. Murray,* 94 S. C. 18, 77 S. E. 712.

"When a trial judge adjourns his court *sine die,* he loses jurisdiction of a case finally determined during that term,

except under special circumstances, as where either by consent or acquiescence of counsel for both sides, or postponing determination of motions duly entered during the sitting of the court, or in some cases where supplemental orders germane to and carrying out the order duly made, and not inconsistent therewith, may be passed. *Burns v. Babb,* 190 S. C. 508, 3 S. E. (2d) 247; *Eagerton v. Atlantic Coast Line* R. Co., 175 S. C. 209, 178 S. E. 844; *Roberts v. Wessinger,* 69 S. C. 283, 48 S. E. 248; *First Carolinas Joint Stock Land Bank of Columbia v. Knotts,* 191 S. C. 384, 1 S. E. (2d) 797.

"Any designated judge who has held court in another circuit than his own, has the power, notwithstanding his absence from such circuit, to decide all matters which have been submitted to him within such circuit, decide motions for new trials duly made, or perform any other act required by law or the rules of the court in order to prepare any case so tried by him for review in an appellate court.

"But the jurisdiction and power of a circuit judge goes no farther. The rule does not contemplate that after he has left the circuit, he shall decide any matter which has not been submitted to or heard by him while holding court in such circuit. No authority is given to him to hear and determine new matter, even though such new matter may arise in the same case. To hold otherwise would result in confusion and inconvenience in the trial of cases and in the administration of justice. It would mean that the parties would be required to go to distant parts, before a judge in another circuit to be heard upon the merits of a motion such as the one before us, which had not been submitted to him."

At the time Judge Weatherford left the Fourth Circuit, no motion was pending before him to change the sentences of the respondents. He had no authority to return to the Fourth Circuit and change the sentences of the respondents. As was said in *Shillito,* "no authority is given to him to hear and determine new matter, even though such new matter may arise in the same case" which he tried. The authority

of Judge Weatherford, with reference to his case, ended and terminated after he had tried and sentenced the respondents. The fact that he thereafter agreed to keep the case under review and to modify and reduce the sentences did not give him jurisdiction to alter and amend the sentences when he had completed his assignment in and left the Fourth Circuit.

In *Stokes v. Murray,* 94 S. C. 18, 77 S. E. 712, this Court held that where a judge signed an order for nonsuit, he loses jurisdiction to pass an order to set it aside after he has left the Circuit, no notice having been given to anyone while Court was in session that such an order would be asked for and no motion having been made before him for such an order while Court was in session. The rationale of this decision is here applicable. At the time of the sentencing of the respondents by the trial judge, no notice was given by the respondents, while Court was in session, that an order would later be asked for changing, altering or amending the sentences so imposed.

The case of *Barnett v. Piedmont Shirt Corp.,* 230 S. C. 34, 94 S. E. (2d) 1, was one to recover damages for slander and the writer of this opinion was the trial judge. The defendant interposed a demurrer and such was argued before me at the 1955 November Term of Court and my assignment in said circuit ended in December of 1955 and I then left the circuit. On January 20, 1956, I issued an order sustaining the demurrer. On February 8, 1956, upon the *ex parte* application of the plaintiff, I issued an order setting forth that it was my intention to grant the plaintiff the right to amend the complaint but inadvertently omitted inserting a provision in said order to such effect. The defendant appealed from my order granting the amendment. This Court, in reversing me, held that after I left the circuit I had the power to issue an order on a matter heard by me while presiding within the circuit and upon the issuance of such order my jurisdiction ended. It also held that I was without juris-

diction to issue a supplemental order granting the amendment and such was null and void.

In addition to the cases hereinbefore cited, we call attention to *State v. Williams,* 221 S. C. 107, 69 S. E. (2d) 371; *Smith v. Quattlebaum,* 223 S. C. 384, 76 S. E. (2d) 154; *Hines v. Farr,* 235 S. C. 436, 112 S. E. (2d) 33 and *State v. Gorie,* S. C., 183 S. E. (2d) 334.

The orders granted by Judge Weatherford were entirely null and void for the reason that he was without jurisdiction of the case at the time he granted such orders. It is clear, under the facts of this case, that Judge Weatherford had no jurisdiction whatever to entertain and grant the motions made in this case.

The respondents argue that a judge who had imposed a sentence has the authority, even though he has left the circuit, to suspend any unserved portion of such sentence. They assert that the time, the place, the manner, and the extent of the suspending of the sentence are exclusive matters for the trial judge and that, even though he has left the circuit, such is no impediment to the exercise of this power by him. We disagree.

Under Section 55-591, Code of 1962, the judge of any court of record with criminal jurisdiction is authorized to suspend, *at the time of sentence,* the execution of the sentence, in whole or in part, and place the defendant on probation or may impose a fine and also place the defendant on probation. The power to suspend the sentences of the respondents had to be exercised at the time the sentences were imposed and the trial judge had no right thereafter to suspend the sentences.

In *Moore v. Patterson,* 203 S. C. 90, 26 S. E. (2d) 319, we held that the aforesaid section gave the trial judge the right, at the time of the sentence, to provide for a suspension of a part of such imprisonment, and the placing of the defendant on probation after serving a designated portion of the term of imprisonment. In the cited case, it was held that

Section 55-591 extends the power to suspend sentence to many felonies as well as misdemeanors.

It is requisite to the orderly administration of justice that when a trial judge has imposed a sentence and the term of court at which such was done has terminated or when the trial judge has completed his service in a circuit, the previous sentence should not be altered, amended, modified, or changed.

We think it appropriate to quote from *United States v. Smith,* 331 U. S. 469, 67 S. Ct. 1330, 91 L. Ed. 1610, the following:

"* * * we would be reluctant to hold that the court has a continuing power on his own initiative to grant what the defendant has not the right to go into open court and ask. To approve the practice followed in this case would almost certainly subject trial judges to private appeals or application by counsel or friends of one convicted. We think that expiration of the time within which relief can openly be asked of the judge, terminates the time within which it can properly be granted on the court's own initiative. * * *"

In summary we hold that the orders of March 17 and 18 were void because the term of court had ended. The order of May 28 was void both because the term of court had ended and because the judge was no longer assigned to the Fourth Circuit. A supersedeas by this Court to each order would have been appropriate. We add that all orders were improvidently granted without notice to the State, and might have been set aside on that ground alone. To discuss cases with interested citizens or even with interested counsel in the absence of the adversary party can lead to much difficulty. Had the State been given the opportunity to call the attention of the judge to the law of the cases herein cited, the result in the court below might have been different and this appeal unnecessary.

The efforts of the judge to keep the cases under review with it in mind to modify or reduce the sentences were based on a misconception of the law.

Such a practice would make of the judge a perpetual parole board. The respondents and the State were entitled to have the sentences determined and finalized at the term of court.

The judgment of the lower court is reversed. The respondents are remanded to custody for the service of the sentences imposed upon them following their convictions in the Court of General Sessions for Darlington County.

Reversed and remanded.

BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.

LEWIS, J., did not participate.