## 21369

The STATE, Appellant-Respondent, v. Gloria Ann MIXON, Respondent-Appellant.

(274 S. E. (2d) 406)

*Atty. Gen. Daniel R. McLeod* and *Asst. Atty. Gen. Kay G. Crowe,* Columbia, and *Sol. Dudley Saleeby, Jr.,* Florence, *for appellant-respondent.*

*Frederick K. Jones,* Florence, *for respondent-appellant.*

January 12, 1981.

LITTLEJOHN, Justice:

Defendant Gloria Ann Mixon was tried and convicted of possession with intent to distribute PCP, a controlled drug substance, in violation of the statutory law of South Carolina. She was sentenced at the December 3, 1979, term of court to prison for five years, and her probationary sentence for forgery was terminated.

At a subsequent term of court commencing December 10, 1979, she moved for and was granted a new trial based upon failure of the State to produce certain statements allegedly requested in a pretrial *Brady* motion by her attorney. The State has appealed the order of Circuit Judge John Hamilton Smith granting a new trial; Mixon has appealed an order of Circuit Judge Ralph King Anderson denying her petition to proceed upon appeal *in forma pauperis.*

The State, on appeal, first submits that the trial judge erred in even considering the motion after the term of court at which Mixon was sentenced had ended. We agree. Each week of court is a separate term. *See State v. Patterson,* 272 S. C. 2, 249 S. E. (2d) 770 (1978). A trial judge is without authority to pursue a case after the term of court has adjourned. *State v. Best,* 257 S. C. 361,

186 S. E. (2d) 272 (1972). Inasmuch as the issue raised might be resubmitted by way of a post-conviction-relief application, we will consider the merits of the judge's ruling on the granting of a new trial and treat the matter as similar to a motion for a new trial on after-discovered evidence.

## RE THE NEW TRIAL ISSUE

In July, 1979, Mixon and two codefendants, Smith and Collins, were arrested in a parking area adjoining a motel and charged with a violation of drug laws. All were indicted for possession of PCP with intent to distribute.

The facts leading up to the arrest are as follows: About 4 o'clock in the morning Collins and Mixon became acquainted at a bar. They adjourned from the bar to Mixon's motel room and departed her room about 10 o'clock a. m. to proceed to the beach in Collins' car. At Collins' car they were joined by Smith, a person known to Mixon but not to Collins. Shortly thereafter, Police Officer Gould approached and informed them that he had reason to believe they were violating the drug laws of the state. With consent, he searched Collins' car; he also searched the pocketbook of Mixon for a weapon. Nothing was found in the car or pocketbook, but he then observed a bag containing 10 packets of PCP on the ground between Mixon and Smith. All three denied ownership or possession of the drugs. A warrant was taken for each one. Smith pled guilty to simple possession, while Collins' case was *nolle prossed* by the solicitor. Mixon demanded trial.

In October of 1979, the attorney for Mixon served on the solicitor an instrument designated "BRADY DEMAND." It would appear to be a form usable in most any case, and reads as follows:

"YOU WILL PLEASE TAKE NOTICE that the undersigned on behalf of the above named Defendant hereby

demands that you provide him any and all exculpatory information which would tend to mitigate or lessen the offense charged and any sentence arising (*sic*) out of the offense charged.

The Defendant particularly demands the following:

1. The names and addresses of all witnesses including law enforcement personnel, present at the time the alleged offense was committed.

2. The names and addresses of all witnesses, including law enforcement personnel, present when this Defendant was arrested.

3. The names and addresses of all witnesses, including law enforcement personnel, present when this Defendant allegedly made statement(s) to law enforcement personnel.

4. Any statement made by Defendant to law enforcement personnel, written, recorded or notes thereof, the date and time of day, as well as the place where the statement was made.

5. Any statements made by this Defendant's co-defendants.

6. Any arrests of Defendant's co-defendants for drug violations other than this indicted offense.

7. Any deal, understanding or agreement entered into between law enforcement personnel and Defendant's co-defendants, concerning prior drug violations."

At some time during the investigation, codefendant Collins gave a statement, which was taped, to the arresting officer. Included on the tape was a statement by Collins that Smith had offered drugs to him and to Mixon in the car, but they had refused acceptance. Collins also stated on the tape that Smith said that he was ". . . gonna go ahead and cop out on the PCP." The tape was delivered to the office of the solicitor. The taped statement of Collins was not disclosed to Mixon's attorney prior to or during the trial.

Smith, whose case had already been disposed, did not testify at the Mixon trial. Collins, who was in Tennessee at the time of the trial, was not called to testify by either the State or the defense. So far as the record shows, neither Mixon nor her counsel talked with Collins or sought to have him present for the trial. The solicitor wanted him present, but did not require him to come from Tennessee.

The gravamen of the motion for a new trial, and the gravamen of the issue which we must decide, is the contentiton of Mixon that she has been denied due process and, accordingly, denied a fair trial because she was not given evidence mandated by *Brady v. Maryland,* 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed. (2d) 215 (1963).

Simply put, the issue before us is: Did the failure of the State to tell Mixon's attorney that Collins had stated that both he (Collins) and Mixon refused to accept drugs from Smith violate her right to due process and a fair trial? We hold that it did not.

We would first point out that the fact that the interrogation was recorded on tape is of no great significance. The fact that the interrogation was on tape merely assured accuracy and made proof easier. The issue is the same as if the oral statement had been made by Collins to the investigating officer. The essence of *Brady* is as follows:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

We held in *State v. Flood,* 257 S. C. 141, 184 S. E. (2d) 549 (1971), that there is no general discovery in criminal cases in South Carolina. We therefore look only to *Brady* and the other cases decided by the Supreme Court of the United States to determine whether the rights of Mixon

have been violated. The *Brady* demand made in this case is somewhat of a blunderbuss shot into the air in hopes that some game would fall to the earth. If it is a valid demand, it can be argued that all police officers who know anything whatsoever conceivably favorable to a defendant should reveal the same for the benefit of defense counsel. *Brady* does not go this far.

The portion of Collins' recorded statement which Mixon claims might have been helpful to her is as follows:

"Larry Smith pulls up and Gloria says—I'm leaving the parking lot—Gloria says stop. Said I know this guy. So I stopped and he comes over and gets in the car. And that, they begin to talk. Okay, Larry Smith says well I have some THC. Do you want some Gloria? She says no and he looks at me and he says *do you want some? I said no, definitely not.*"

At trial, Mixon testified as follows:

"Q. Have you ever had any conversation with Larry Smith concerning PCP?

A. No, sir, I haven't."

A reading of the statements of Collins and Mixon on their face clearly shows that different drugs are referred to, thereby disputing the exculpatory value of Collins' statement. THC is, according to § 44-53-190, *Code of Laws of South Carolina* (1976), Tetrahydrocannabinol. It is a chemical substance found in marihuana and can be produced synthetically. PCP is more properly called Phencyclidine, a drug often used in veterinarian medicine as a tranquilizer.

Even assuming that Collins intended to say PCP instead of THC, or assuming that the terms are used interchangeably in the drug culture, his statement would not benefit Mixon in that she testified that no such discussion even occurred. The effect of Collins' statement would be to directly challenge the credibility of Mixon.

Mixon knew as well as anyone what transpired at the scene of the arrest. If she refused to accept illegal drugs (THC or PCP) in Collins' presence, she could not help but be aware that Collins had this information and could so testify. She should not be permitted to claim that she was surprised by the fact that Collins would make the statement to the investigating officer. The contention that the defense expected the State to subpoena Collins has little appeal. The only reason for the State to subpoena Collins would be to have him testify that Mixon possessed the drugs. The record does not reflect any effort on the part of the defense to have Collins present at the trial. The gravamen of Mixon's contention is "If I had known that Collins stated that I refused to accept the drugs, I would have considered the advisability of subpoenaeing him."

While the matter before us is not a motion for a new ■ trial on the grounds of after-discovered evidence, the relief sought is in somewhat the same vein. In *United States v. Agurs,* 427 U. S. 97, 96 S. Ct. 2392, 49 L. Ed. (2d) 342 (1976), the court said:

"A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial."

When a new trial is sought on the grounds that new evidence has been discovered, a retrial is not in order unless a showing be made, among other things, that the new evidence would probably change the result. By a similar reasoning, a new trial is not required in every case wherein some evidence has not been revealed by the State in response to a *Brady* demand.

*Brady* does not speak in terms of creating rights to discover, but rather determined that suppression by the prosecution of evidence favorable to an accused upon request vio-

lates due process where the evidence is material either to guilt or punishment.

In *United States v. Agurs, supra,* the Court attempted to settle misconceptions growing out of *Brady.* We quote:

"In *Brady* the request was specific. It gave the prosecutor notice of exactly what the defense desired. Although there is ,of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.

For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose.

. . . If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice.

. . . The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.

. . . . . .

It necessarily follows that the judge should not order a new trial every time he is unable to characterize a nondisclosure as harmless under the customary harmless-error standard. Under that standard when error is present in the record, the reviewing judge must set aside the verdict and judgment

unless his 'conviction is sure that the error did not influence the jury, or had but very slight effect.' *Kotteakos v. United States,* 328 U. S. 750, 764, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557. Unless every nondisclosure is regarded as automatic error, the constitutional standard of materiality must impose a higher burden on the defendant.

. . . It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.

This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."

The judge did not consider the verdict of questionable validity. At the sentencing stage, he was obviously satisfied with the verdict. The following appears in the transcript:

'The Court: Well, the jury found you guilty and I certainly can't quarrel with their verdict. They had sufficient evidence, plenty sufficient evidence, to convict you on. I don't know how much you are involved with the sale of drugs, I don't know whether this was your first time—

Ms. Mixon: Yes, sir, it is.

The Court: —to be involved with selling drugs, I don't know, but I think the jury reached the right—I have no quarrel with their verdict.

There is no contention in this case that the State intentionally withheld information from the defense. It is certainly debatable as to whether the information alleged to have been withheld would have been in favor of Mixon in light of her own testimony. We are of the opinion that it

would not have affected the result. If she did not know already that Collins knew that she did not accept an illegal drug from Smith, she could have obtained this information by merely talking with him.

The additional sustaining grounds have been considered and found to be without merit.

We hold that the trial judge erred in granting a new trial, and reinstate the conviction and sentence.

### RE THE *IN FORMA PAUPERIS* ISSUE

We now address the contention of Mixon that Judge Ralph King Anderson improperly denied her post-trial petition to proceed *in forma pauperis* on appeal. Specifically, Mixon requested that her retained counsel be allowed to continue his representation of her on appeal as appointed counsel, thereby entitling him to compensation from public funds. Judge Anderson denied her petition on the ground that Rule 5 of the rules of this court, issued pursuant to the Defense of Indigents Act, § 17-3-110, *Code of Laws of South Carolina* (1976), prohibits such request. We agree in part and disagree in part. Rule 5 is concerned with the situation where *an attorney* requests relief from further representation of his client. (Emphasis added.) That rule requires a showing of good cause, and the mere fact that the accused is indigent at the conclusion of trial does not constitute good cause. Rule 3, however, applies where *the defendant,* upon completion of the trial stage, seeks a redetermination of indigency for purposes of the appeal. (Emphasis added.) Under Rule 3, the judge must make a finding on indigency as of that point in time. The situation before us is controlled by Rule 3, and the judge should have based his decision on a determination of the alleged indigency of Mixon. However, even if Mixon is found to have been indigent, she is not entitled under the Rule to have her retained counsel appointed as her counsel for appeal. He continued to serve by reason of employment.

The case is remanded for purposes consistent with our ruling above.

Reversed and remanded.

LEWIS, C. J., and NESS, GREGORY and HARWELL, JJ., concur.