23813

The STATE, Appellant-Respondent v. Robert W. SOUTH, Respondent-Appellant.

(427 S.E. (2d) 666)

Supreme Court

Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Atty. Gen. Norman Mark Rapoport, Delbert H. Singleton, Jr., Columbia, and Sol. Donald V. Meyers, Lexington, for appellant-respondent.

John H. Blume, III, of South Carolina Death Penalty Resource Center, John F. Hardaway, and South Carolina Office of Appellate Defense, Columbia, for respondent-appellant.

Heard Dec. 7, 1992.

Decided Feb. 22, 1993.

MOORE, Justice:

In 1983, Respondent-Appellant Robert W. South was con-

victed of murder and sentenced to death for the drive-by shooting of a police officer. This Court affirmed the conviction and sentence. *State v. South*, 285 S.C. 529, 331 S.E. (2d) 775; *cert. denied*, 474 U.S. 888, 106 S.Ct. 209, 88 L.Ed. (2d) 178 (1985). South's application for post-conviction relief (PCR) was denied. Petitions for writ of certiorari to review his denial of PCR were denied by this Court and the United States Supreme Court. South initiated federal habeas corpus proceedings which were dismissed without prejudice when South sought leave from this Court to move for a new trial on the ground of after-discovered evidence.

This Court granted South leave to make a motion for a new trial. Following a hearing, Judge John Hamilton Smith[1] denied South's motion for a new trial to determine his guilt or innocence but granted South a resentencing proceeding. South now appeals the denial of his motion for a new trial while the State appeals the granting of South's motion for a resentencing proceeding. We affirm in part; reverse in part; and remand.

## FACTS

At South's 1983 trial, his defense was that a hitchhiker (who South referred to as "Sport") forced South at gunpoint to drive his truck by a police officer who had stopped another driver on the side of the road. South claimed Sport then shot the officer and fled from South's truck moments before South was apprehended. The time between the shooting and South's apprehension was less than one minute.

In 1989, South discovered a brain tumor or cyst[2] which a radiologist had failed to discover following a computerized axial tomography (CAT scan) in 1983. There is no dispute that the tumor was present in 1983 but not diagnosed until 1989 following a magnetic resonance imaging (MRI). Since 1983, the tumor has grown very little, if any. The tumor is located in the pineal gland of the brain. What the pineal gland does or how it influences behavior is unknown. The potential problems caused by the tumor appear to be its pressure on the brain it-

---

[1] Judge Smith was also the original trial judge.

[2] There was much discussion at the hearing of the correct terminology for the growth. The growth is a fluid-filled benign cyst which is technically referred to as a tumor.

self and its exaggeration of the effects of drugs and alcohol.

South grew up in foster homes and orphanages where he was physically and psychologically abused. As an adult, South abused alcohol and drugs. South frequently used various drugs (marijuana, LSD, cocaine, quaaludes, hashish, and mushrooms) and alcohol, and had inhaled freon two or three times a day for years. On the day of the offense, South had taken one gram of cocaine, smoked several marijuana cigarettes, and drank 36-42 beers. His blood alcohol level was estimated to be .20 at time of the offense. All of this information was known at the time of trial and presented to the jury at South's original sentencing proceeding.

## ISSUES

1. Did the trial judge err in denying South a new trial?
2. Did the trial judge err in granting South a resentencing proceeding?

## DISCUSSION

### 1) Denial of motion for a new trial

The denial of a motion for a new trial will not be reversed absent an abuse of discretion. *State v. Caskey,* 273 S.C. 325, 256 S.E. (2d) 737 (1979); *State v. Wright,* 228 S.C. 432, 90 S.E. (2d) 492 (1955). To obtain a new trial based on after-discovered evidence, the party must show that the evidence:

(1) would probably change the result if a new trial is had;
(2) has been discovered since the trial;
(3) could not have been discovered before trial;
(4) is material to the issue of guilt or innocence; and
(5) is not merely cumulative or impeaching.

*See e.g., Hayden v. State,* 278 S.C. 610, 299 S.E. (2d) 854 (1983); *Caskey, supra.* In this case, the argument centers around the first factor and whether the presence of the tumor would probably change the result if a new trial is had. South argues that the newly discovered tumor rendered him legally insane at the time of the offense. Further, he argues the presence of the tumor would probably change the result if a new trial is had and, therefore, he is entitled to a new trial. Judge

Smith held that the presence of the tumor would not have changed the result of the trial. We agree.

In South Carolina, the M'Naughten test is the standard for determining whether a defendant's mental condition at the time of the offense rendered him criminally responsible. S.C. Code Ann. § 17-24-10 (Supp. 1989); *Davenport v. State*, 301 S.C. 39, 389 S.E. (2d) 649 (1990). The defendant is considered legally insane if, at the time of the offense, he lacked the capacity to distinguish moral or legal right from wrong. *Id.* Furthermore, voluntary intoxication does not relieve an individual from criminal responsibility. *State v. Hartfield*, 300 S.C. 469, 388 S.E. (2d) 802 (1990); *State v. Vaughn*, 268 S.C. 119, 232 S.E. (2d) 328 (1977).

Of the experts who testified at the hearing, only Dr. James Merikangas testified that he believed South was legally insane at the time of the offense. In his written report, Dr. Merikangas stated South was legally insane and "unable to know right from wrong, to control his actions." At the hearing, Dr. Merikangas testified that "some people are too drunk to know right from wrong." Furthermore, Dr. Merikangas testified that intoxication sometimes relieves an individual from knowing the difference between right from wrong. Dr. Merikangas' conclusions regarding legal sanity are not in accord with South Carolina's standard.

In a written report which was introduced at the hearing, Dr. Arlene Bowers concluded South suffered from post-traumatic stress disorder because of his abusive childhood and diminished mental capacity because of substance abuse. Dr. Bowers stated the "brain tumor *may* have had additional effects on these conditions." Further, she stated, without reference to the tumor, that South's "chronic distress, deteriorated condition due to substance abuse, and his impending threat of additional losses are likely to have adversely affected his ability to think rationally and act in conformity with the law." This Court has rejected the "irresistible impulse" test as an insanity defense. *State v. Wilson*, — S.C. —, 413 S.E. (2d) 19 (1992).

Jack Swerling, South's original trial counsel, testified that had he known of the tumor "[i]nsanity may or may not have been a viable defense." He explained that there was never an issue of sanity and no basis to believe M'Naughten would

apply because South claimed he did not commit the murder. Swerling testified he would have used the presence of the tumor only as a mitigating circumstance during the sentencing proceeding, if supported by the testimony of credible witnesses.

The evidence and testimony presented at the hearing show the tumor may have had some effect upon South. However, South failed to establish that the tumor rendered him legally insane and its presence probably would change the result of a new trial. South failed to establish grounds for a new trial under the Caskey requirements. Therefore, Judge Smith's denial of South's motion for a new trial was not an abuse of discretion.

### 2) Granting of motion for resentencing

This Court has not addressed whether a different standard should be applied to a motion for a resentencing proceeding in a bifurcated capital case. The factors set forth in *Caskey, supra,* apply specifically to the guilt phase of a trial because the fourth factor refers to whether the newly discovered evidence is material to guilt or innocence. We now hold that the factors in *Caskey* apply to motions for resentencing proceedings with a modification of the fourth factor, such that the newly discovered evidence must be material to any mitigating or aggravating circumstances.

In granting South's motion for a resentencing proceeding, Judge Smith held "there is a *significant possibility* that the outcome of the sentencing *could* have been different." The State contends Judge Smith should not have granted South a resentencing proceeding unless the newly discovered evidence probably would change the result and, therefore, Judge Smith erred in applying the wrong standard. We agree. Judge Smith did not apply the correct standard and the granting of the motion for a resentencing proceeding is reversed and remanded for the correct standard to be applied.

Affirmed in part; reversed in part; and remanded.

HARWELL, C.J., and CHANDLER, FINNEY and TOAL, JJ., concur.