597 S.E.2d 822

**The STATE of South Carolina, Respondent,**

v.

**Gary Thomas HILL, Appellant.**

**No. 3795.**

Court of Appeals of South Carolina.

Heard Jan. 14, 2004.

Decided May 11, 2004.

Rehearing Denied June 28, 2004.

J. Stephen Welch, of Greenwood, for Appellant.

Deputy Director for Legal Services Teresa A. Knox, Legal Counsel Tommy Evans, Jr., and Legal Counsel J. Benjamin Aplin, all of South Carolina Department of Probation, Parole and Pardon Services, of Columbia, for Respondent.

CURETON, A.J.:

Gary Thomas Hill appeals the circuit court's decision revoking his probation and sentencing him to seven years imprisonment. We affirm in part, reverse in part, and remand.

## FACTS

On November 4, 1991, Hill was convicted of second-degree arson, second-degree burglary, malicious injury to personal property, driving under the influence (fourth offense), and criminal domestic violence (third offense). The judge sentenced Hill to twenty years imprisonment, suspended upon the service of ten years and five years probation. Hill was granted parole on July 28, 1996. His parole ended on February 25, 1997, and his probation began immediately thereafter. When the events that are the subject of this appeal took place, Hill had completed approximately four years and eight months of his probation.

On October 24, 2001, Hill's probation officer, Marshall Evans, received a call from the Department of Social Services ("DSS"). DSS informed Evans that it had reason to believe Hill possessed firearms and had been pointing them at his son. To further investigate this information, Evans called Hill and asked him to come to his office. Hill went to see Evans as requested on October 25, 2001.

Evans confronted Hill with the information received by DSS and asked whether he did in fact possess any weapons. Hill admitted that his son owned a .22 caliber rifle, which he had received for his birthday. Hill agreed to let Evans and other

probation officers search his house for weapons, but the agreed upon search never took place.

While in Evans's office, Hill asked if he could get a drink of water. Evans agreed and accompanied Hill as he went into the hallway. After getting some water, Hill turned and headed down the hall towards the exit. Although Evans asked Hill to stop, he did not respond and instead proceeded out of the building where he locked himself in his car. Evans testified that at least three other probation officers were involved in trying to "chase" Hill down.

The officers surrounded Hill's car and attempted to gain entry. Despite the officers' commands to stop, Hill began to drive out of the parking lot notwithstanding the proximity of the officers to his car. At this point, two of the officers opened fire on Hill's car. Hill's car was hit several times in numerous places including the rear window, the side window, the trunk, and the rear quarter panel. Hill received three gunshot wounds, one in the head and two in the back. Although the officers shot Hill three times, he never stopped his car. He was arrested some time later while seeking treatment at a hospital.

Hill hired attorney James Brislane to represent him at the probation revocation hearing. On November 1, 2001, Brislane filed motions under Rule 5, SCRCrimP, and *Brady v. Maryland*.[1] Hill asserts on appeal these motions were filed to determine exactly what happened on the day of the incident. Hill believed he was entitled to the following: (1) the names of witnesses that supported his version of the incident; (2) written statements of the probation agents; (3) Anderson City Police Department investigative materials; and (4) the South Carolina Law Enforcement Division ("SLED") report.

On November 11, 2001, Brislane moved for a continuance of the probation revocation hearing. At the hearing on the motion, the court informed Brislane that because the probation and parole department's records were confidential,[2] nei-

---

1. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. Although the judge did not reference the specific statute, he was apparently relying on section 24–21–290, which provides:

ther a Rule 5 motion nor a *Brady* motion were appropriate for obtaining the requested information. The court instructed Brislane to find the statute applicable to the parole department's records and to serve the appropriate motion on counsel. The court also informed Brislane it would hear the motion once correctly made.

The record does not disclose any motions made according to the court's instructions prior to the probation revocation hearing, which was held on December 21, 2001. Neither the SLED report outlining the investigation of the incident nor the Anderson Police Department's report was furnished to Hill or his counsel prior to the hearing.

At the revocation hearing, the circuit court and Brislane agreed the key issue was not whether Hill violated his probation, but whether he violated his probation willfully.[3] All of the officers involved in the incident testified at the hearing. The majority of the testimony presented consisted of the officers' assertions that Hill intentionally tried to run them over during his escape. On cross-examination of each witness, Brislane tried to discredit the idea that Hill intentionally attempted to harm the officers. However, at the conclusion of the hearing, the court revoked Hill's probation and sentenced him to seven years imprisonment.

Following the revocation hearing, Hill hired Beattie Ashmore to represent him. Ashmore filed a motion to reconsider on December 28, 2001. In the motion, Ashmore asked the court to reconsider the ruling based on the fact that the SLED report investigating the incident was not complete and the report contained mitigating information.

---

All information and data obtained in the discharge of his official duty by a probation agent is privileged information, is not receivable as evidence in a court, and may not be disclosed directly or indirectly to anyone other than the judge or others entitled under this chapter to receive reports unless ordered by the court or the director.
S.C.Code Ann. § 24–21–290 (Supp.2003).

**3.** Because the Department did not attempt to revoke Hill's probation on a failure to pay fees, a finding of willfulness was not necessary for the court to determine whether to revoke Hill's probation. *See State v. Hamilton*, 333 S.C. 642, 649, 511 S.E.2d 94, 97 (Ct.App.1999) ("It is only when probation is revoked *solely* for failure to pay fines or restitution that a finding of willfulness is mandatory.").

After filing the motion to reconsider, Ashmore made several additional motions in an attempt to obtain the SLED report. These motions included a motion to produce, another motion pursuant to Rule 5, SCRCrimP, and another *Brady* motion. Ashmore also served subpoenas on SLED and the Anderson County Solicitor's Office. Due to these efforts, Hill received the SLED report prior to the hearing on the motion to reconsider.

At the hearing, the circuit court asked Ashmore whether he was proceeding under Rule 28 or Rule 29, SCRCrimP.[4] After a brief colloquy, the court informed counsel that he could not proceed under both so he would have to elect. Ashmore chose to proceed under Rule 29. Relying on the information in the SLED report, Ashmore presented evidence that countered the probation officers' assertions that Hill intentionally tried to hit them with his vehicle.

In an order dated July 3, 2002, the court denied Hill's motion on the ground that he failed to meet the five elements required to support the award of a new trial based on after-discovered evidence. Specifically, the court ruled that even considering the additional evidence presented, the outcome would not change if a new hearing were permitted. As such, the court upheld its previously imposed sentence of seven years. Hill appeals.

## STANDARD OF REVIEW

The determination of whether or not to revoke probation is within the trial court's discretion. *State v. Proctor,* 345 S.C. 299, 301, 546 S.E.2d 673, 674 (Ct.App.2001). "[B]efore revoking probation, the circuit judge must determine if there is sufficient evidence to establish the probationer has violated his probation conditions." *State v. Lee,* 350 S.C. 125, 131, 564 S.E.2d 372, 375 (Ct.App.2002). "This court's authority to review such a decision is confined to correcting errors of law unless the lack of a legal or evidentiary basis indicates the

---

4. Rule 28 provides that a defendant "shall not be permitted to submit any affidavit to the court which goes to deny matters of fact, but he may submit affidavits as to matters in extenuation and mitigation." Rule 28, SCRCrimP. Rule 29(b) provides for a new trial based on after-discovered evidence. Rule 29(b), SCRCrimP.

circuit judge's decision was arbitrary and capricious." *State v. Hamilton,* 333 S.C. 642, 647, 511 S.E.2d 94, 96 (Ct.App.1999); *see State v. Brown,* 284 S.C. 407, 410, 326 S.E.2d 410, 411 (1985) (holding judges are "allowed a wide, but not unlimited, discretion in imposing conditions of suspension or probation and they cannot impose conditions which are illegal and void as against public policy").

## DISCUSSION

### I. *Brady* and Rule 5 Motions

Hill argues the circuit court erred by not requiring the State to produce the information requested through the Rule 5 and *Brady* motions prior to the probation revocation hearing.

■ "The rules encompassed in *Brady,* and its progeny, and Rule 5 are separate and impose different duties. Therefore, separate analysis must be used to determine if either has been violated." *State v. Kennerly,* 331 S.C. 442, 452, 503 S.E.2d 214, 219 (Ct.App.1998), *aff'd,* 337 S.C. 617, 524 S.E.2d 837 (1999).

■ "A *Brady* claim is based upon the requirement of due process. Such a claim is complete if the accused can demonstrate (1) the evidence was favorable to the accused, (2) it was in the possession of or known to the prosecution, (3) it was suppressed by the prosecution, and (4) it was material to guilt or punishment." *Gibson v. State,* 334 S.C. 515, 524, 514 S.E.2d 320, 324 (1999). "This rule applies to impeachment evidence as well as exculpatory evidence." *Id.*

"The requirements of Rule 5, as opposed to the constitutional dictates of *Brady,* are judicially created discovery mechanisms for use in criminal proceedings." *State v. Proctor,* 348 S.C. 322, 330, 559 S.E.2d 318, 322 (Ct.App.2001), *rev'd on other grounds,* 358 S.C. 424, 595 S.E.2d 480 (2004). Although Hill's counsel proceeded under several provisions of Rule 5, the primary subsection was Rule 5(a)(1)(C). This subsection provides:

(C) Documents and Tangible Objects. Upon request of the defendant the prosecution shall permit the defendant to inspect and copy books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions

thereof, which are within the possession, custody or control of the prosecution, and which are material to the preparation of his defense or are intended for use by the prosecution as evidence in chief at the trial, or were obtained from or belong to the defendant.

Rule 5(a)(1)(C), SCRCrimP.

"The definition of 'material' for purposes of Rule 5 is the same as the definition used in the *Brady* context." *Kennerly*, 331 S.C. at 453, 503 S.E.2d at 220. "Impeachment or exculpatory evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Von Dohlen*, 322 S.C. 234, 241, 471 S.E.2d 689, 693 (1996).

The application of the discovery rules in the context of a probation revocation hearing is a novel issue in this state. Although our appellate courts have found the rules to be applicable in "criminal proceedings," the specific types of criminal proceedings have not been defined. *See Kennerly*, 331 S.C. at 453, 503 S.E.2d at 220 ("The requirements of Rule 5, as opposed to the constitutional dictates of *Brady*, are judicially created discovery mechanisms for use in criminal proceedings."); *see also* Rule 5, SCRCrimP (titled "Disclosure in Criminal Cases"). The text of Rule 5 and the theoretical underpinnings of *Brady* appear to suggest that these disclosure rules are only applicable in criminal trials. In this state, however, these rules have not been so limited.

Aside from trial proceedings, our research reveals these rules have been extended to apply to guilty plea and sentencing proceedings. *See Gibson*, 334 S.C. at 525, 514 S.E.2d at 325 ("The standard for deciding the materiality of a *Brady* violation in the context of a guilty plea is a novel issue in South Carolina. We adopt the standard applied by other courts, which essentially is the same standard that is applied in the context of a trial: A *Brady* violation is material when there is a reasonable probability that, but for the government's failure to disclose *Brady* evidence, the defendant would have refused to plead guilty and gone to trial."); *State v. Gulledge*, 321 S.C. 399, 402, 468 S.E.2d 665, 667 (Ct.App.1996) (discussing and implicitly recognizing the application of Rule 5

and *Brady* in the context of sentencing proceedings), *aff'd as modified,* 326 S.C. 220, 487 S.E.2d 590 (1997). The application of these two rules is not, however, without limitation. *See State v. McCoy,* 285 S.C. 115, 116, 328 S.E.2d 620, 621 (1985) (declining to apply *Brady* in the context of a family court transfer hearing given the hearing was not a trial and was not a preliminary determination of guilt).

In order to determine whether these disclosure rules apply to a probationer, we find it instructive to consider two United States Supreme Court decisions analyzing the due process requirements for parole and probation revocation. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

In *Morrissey,* the United States Supreme Court considered whether the Due Process Clause of the Fourteenth Amendment required the State to afford an individual some opportunity to be heard prior to the revocation of his parole. *Id.* at 472. In answering this question, the Court first considered the "function of parole in the correctional process." *Id.* at 477. Because "the revocation of parole is not part of a criminal prosecution," the Court concluded, "the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Id.* at 480. The Court did, however, find that a parolee is entitled to due process to a limited extent.

Specifically, the Court held that after arrest a parolee is entitled to a preliminary hearing "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Morrissey,* 408 U.S. at 485, 92 S.Ct. 2593. Additionally, the Court found the parolee was also entitled to a revocation hearing during which he would have "an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Id.* at 488, 92 S.Ct. 2593. In terms of the specific procedural requirements for due process, the Court listed several, including: disclosure to the parolee of evidence against him; the right to confront and cross-examine adverse witnesses; a written statement by the fact finders as to the

evidence relied on and the reasons for revoking parole. *Id.* at 489, 92 S.Ct. 2593.

The next year, the United States Supreme Court extended the analysis in *Morrissey* to hold that a probationer is also guaranteed due process. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The Court concluded, "[p]robation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty." *Id.* at 782, 93 S.Ct. 1756. The Court explained, "a probationer can no longer be denied due process" on the ground that "probation is an 'act of grace.' " *Gagnon,* 411 U.S. at 782 n. 4, 93 S.Ct. 1756.

In light of this precedent, we must determine whether a probationer facing revocation is entitled to discovery based on these due process rights. State courts are divided on this issue.[5] *See* Bobbi J. Anello, Annotation, *Availability of Discovery At Probation Revocation Hearings,* 52 A.L.R. 5th 559 (1997 & Supp.2003) (analyzing cases in which the courts have considered the availability of discovery to probationers at their revocation hearings). As discussed in the above-referenced article, there are primarily two grounds for which discovery is permitted in probation revocation cases.

Some jurisdictions have adopted the view that discovery in revocation proceedings is permissible based on a constitutional due process right. The courts in these cases have followed the reasoning outlined in *Morrissey* and *Gagnon. See, e.g.,*

---

5. Although there also appears to be a division among federal courts as to whether *Brady* is applicable to probation revocation hearings, we focus our analysis on state court decisions given Rule 32.1(b)(2) of the Federal Rules of Criminal Procedure specifically outlines the procedure governing revocation hearings. *See United States v. Dixon,* 187 F.Supp.2d 601, 602–03 (S.D.W.Va.2002) (discussing federal courts which have questioned whether *Brady* is applicable in the revocation context); Fed.R.Crim.P. 32.1(b)(2) ("Revocation Hearing. Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to: (A) written notice of the alleged violation; (B) disclosure of the evidence against the person; (C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear; and (D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel.").

*Kanuck v. Meehan,* 165 Ariz. 282, 798 P.2d 420 (Ct.App.1990); *People v. Boykin,* 631 P.2d 1149 (Colo.Ct.App.1981); *Hines v. State,* 358 So.2d 183 (Fla.1978); *Piper v. State,* 770 N.E.2d 880 (Ind.Ct.App.2002); *Reiter v. Camp,* 518 S.W.2d 82 (Mo.Ct. App.1974); *People v. Adams,* 47 A.D.2d 928, 367 N.Y.S.2d 67 (N.Y.App.Div.1975). The jurisdictions that have rejected this concept do so on the theory that if a criminal defendant does not have a constitutional right to discovery, then a probationer should not be entitled to greater rights than a defendant at trial. *See, e.g., Irby v. State,* 455 So.2d 271 (Ala.Crim.App. 1984); *People v. King,* 89 Cal.App.3d 506, 152 Cal.Rptr. 566 (1979); *State v. Hass,* 114 Idaho 554, 758 P.2d 713 (Ct.App. 1988); *People v. DeWitt,* 78 Ill.2d 82, 34 Ill.Dec. 319, 397 N.E.2d 1385 (1979); *Commonwealth v. Quinlan,* 251 Pa.Super. 428, 380 A.2d 854 (1977), *aff'd,* 488 Pa. 255, 412 A.2d 494 (1980).

Taking a different approach, some jurisdictions have held that state criminal discovery rules, comparable to our Rule 5, are applicable in probation revocation hearings. *See, e.g., State v. Quelnan,* 70 Haw. 194, 767 P.2d 243 (1989); *State v. Barton,* 119 Idaho 114, 803 P.2d 1020 (Ct.App.1991). In contrast, a number of jurisdictions have rejected this view on the ground that a probation revocation hearing is not a "criminal trial" and, thus, the criminal rules of discovery are inapplicable. *See, e.g., Poole v. State,* 167 Ga.App. 321, 306 S.E.2d 394 (1983); *People v. DeWitt,* 78 Ill.2d 82, 34 Ill.Dec. 319, 397 N.E.2d 1385 (1979); *People v. Mitchell,* 201 A.D.2d 507, 607 N.Y.S.2d 417 (N.Y.App.Div.1994); *State v. Gedutis,* 163 Vt. 591, 653 A.2d 761 (1994).

▮ Given our appellate courts have extended the application of *Brady* and Rule 5 beyond criminal trial proceedings, we are persuaded by those jurisdictions that have applied *Brady* and state criminal discovery rules in probation revocation proceedings. As previously discussed, these disclosure rules have been applied in sentencing proceedings and guilty plea proceedings. Thus, the fact that a probation revocation hearing is not the equivalent of a "criminal trial" is not dispositive. *See State v. Franks,* 276 S.C. 636, 638, 281 S.E.2d 227, 228 (1981) (A "probation revocation proceeding is not a criminal trial . . . but a more informal proceeding with respect to notice and proof of the alleged violations."). Similar to a

sentencing or guilty plea proceeding, a probation revocation hearing involves a determination of "guilt," *i.e.*, whether a probation violation has occurred, as well as an imposition of a sentence. As such, we discern no reason to restrict the application of the due process requirements of *Brady* in this setting. *See Huckaby v. State*, 305 S.C. 331, 335 n. 1, 408 S.E.2d 242, 244 n. 1 (1991) (recognizing constitutional rights are available to probationer). Moreover, even though the text of Rule 5 refers to trials, the heading of the rule includes "criminal cases" and provides for disclosure of information that is "material to the preparation" of the defense. Furthermore, there is no apparent statutory restriction placed on disclosure. In fact, the statute that the circuit court relied on in this case to restrict discovery permits the court to order disclosure of material obtained by a probation agent. S.C.Code Ann. § 24–21–290 (Supp.2003).

Our decision should not, however, be translated into unlimited discovery for a probationer. *See State v. Mixon*, 275 S.C. 575, 582–83, 274 S.E.2d 406, 409 (1981) (*"Brady* does not speak in terms of creating rights to discover, but rather determined that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment."). Instead, we agree with those jurisdictions that permit "reasonable" discovery. *See* Bobbi J. Anello, Annotation, *Availability of Discovery At Probation Revocation Hearings*, 52 A.L.R. 5th 559, 587 (1997 & Supp.2003); *see, e.g., Kanuck v. Meehan*, 165 Ariz. 282, 798 P.2d 420 (Ct.App.1990); *Cuciak v. State*, 410 So.2d 916 (Fla.1982); *State v. DeBorde*, 121 N.M. 601, 915 P.2d 906 (Ct.App.1996). Although the parameters of "reasonable" discovery are difficult to outline, at least one jurisdiction has explained "[t]he trial court has the inherent power to decide what is reasonable discovery in a probation revocation proceeding. . . . At the very least a probationer is entitled to the name and identification of his accusers and other basic information that is reasonably necessary to the preparation of his defense." *Cuciak*, 410 So.2d at 918.

Applying the foregoing analysis to the instant case, we find the trial court erred as matter of law in ruling that *Brady* and Rule 5 did not apply to Hill's probation revocation proceeding. Moreover, we reject the Department's position that

it was unable to comply with these rules because it is a separate entity from SLED and the Anderson County Solicitor's Office, the departments that had direct access to the requested documents. Even if the information was not in the possession of the Department, *Brady* and Rule 5 still required disclosure to Hill. *See Kennerly,* 331 S.C. at 452, 503 S.E.2d at 220 (The *Brady* disclosure rule "extends to evidence that is not in the actual possession of the prosecution but known by others acting on the government's behalf."); *Id.* at 453, 503 S.E.2d at 220 (Rule 5 "clearly applies to evidence within the actual possession of the prosecution and seems to also apply to evidence within the possession of other government agencies."); *see also* S.C.Code Ann. § 24-21-280(B) (Supp.2003) ("A probation agent has the power and authority to enforce the criminal laws of the State. In the performance of his duties of probation, parole, community supervision, and investigation, he is regarded as the official representative of the court, the department, and the board."); *cf. Morrissey,* 408 U.S. at 480, 92 S.Ct. 2593 ("Supervision [in a parole case] is not directly by the court but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive.").

■ Finally, the failure to disclose this evidence to Hill prior to the revocation hearing was not harmless. *See Proctor,* 348 S.C. at 334-35, 559 S.E.2d at 324-25 (applying harmless error analysis to State's failure to comply with Rule 5 and *Brady* ). "For *Brady* purposes, in determining the materiality of nondisclosed evidence, an appellate court must consider the evidence in the context of the entire record. However, the court should not consider the sufficiency of the evidence. The court's function is to determine whether the appellant's right to a fair trial has been impaired." *State v. Taylor,* 333 S.C. 159, 177, 508 S.E.2d 870, 879 (1998) (citations omitted).

Here, the requested documents were produced just prior to the hearing on Hill's motion for reconsideration. At that point in the procedure, the circuit court had ruled on the merits of the revocation without the benefit of all of the evidence. The fact that Hill was able to use the information at the reconsideration hearing did not remove the prejudice. Having already found Hill violated his probation and having imposed a sentence, we believe it would have been difficult for the court to

be completely objective during the subsequent proceeding. Thus, we find the information was material and the failure to disclose it deprived Hill of a fair hearing. *See People v. Mitchell,* 201 A.D.2d 507, 607 N.Y.S.2d 417, 418 (N.Y.App.Div. 1994) (holding probationer was entitled access to prior statements of hearing witnesses regarding the subject of their testimony in order to afford him "a meaningful opportunity to conduct cross-examination" at his probation revocation hearing); *see also State v. Cheeseboro,* 346 S.C. 526, 553, 552 S.E.2d 300, 314 (2001), *cert. denied,* 535 U.S. 933, 122 S.Ct. 1310, 152 L.Ed.2d 219 (2002) ("Evidence is material only if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *State v. Goodson,* 276 S.C. 243, 247, 277 S.E.2d 602, 604–05 (1981) (stating, in discussing a *Brady* violation, "[w]hile we are not persuaded that this evidence necessarily exculpates appellant, we find that sufficient question has been cast upon conclusions reached in the trial below to justify a reconsideration of the matter by a jury appraised [sic] of these new factors").

█ Because the definition of "material" is the same for analysis under *Brady* and Rule 5, we also find the failure to disclose the requested documents constituted a Rule 5 violation. "Once a Rule 5 violation is shown, reversal is required only where the defendant suffered prejudice from the violation." *Proctor,* 348 S.C. at 330–31, 559 S.E.2d at 322. Again, we find Hill was prejudiced by the late disclosure given he was unable to present this evidence and thoroughly cross-examine the witnesses. Accordingly, we remand for a *de novo* revocation hearing.

## II. 42 U.S.C. § 1983

█ Hill argues the circuit court erred in offering to reduce his sentence if he would release any claims he may have pursuant to 42 U.S.C. § 1983. Hill asserts this suggestion came up during a discussion between the parties.

We, however, find the issue is not preserved for our review because the conversation is not included in the record on appeal. *See York v. Conway Ford, Inc.,* 325 S.C. 170, 173, 480

S.E.2d 726, 728 (1997) (stating objection made in off-the-record conference not placed on record does not preserve the issue for review); *see also Hundley v. Rite Aid of South Carolina Inc.,* 339 S.C. 285, 306, 529 S.E.2d 45, 57 (Ct.App. 2000) (finding motions must be made on the record to be preserved for review by an appellate court).

### III.   Rules 28 and 29, SCRCrimP

■■■ Hill contends the circuit court erred by not allowing defense counsel to proceed simultaneously under both Rules 28 and 29, SCRCrimP.

At the beginning of the hearing on Hill's motion to reconsider, the court informed counsel he would have to choose between Rule 28 and Rule 29, as he could not proceed under both simultaneously.   Defense counsel agreed and decided to proceed under Rule 29 for a new trial based on after-discovered evidence.   Because counsel conceded this issue during the proceedings below, it is not preserved for our review.   *State v. Benton,* 338 S.C. 151, 157, 526 S.E.2d 228, 231 (2000), *cert. denied,* 530 U.S. 1209, 120 S.Ct. 2209, 147 L.Ed.2d 242 (2000) (holding issue not preserved for appellate consideration where appellant conceded the issue at trial); *TNS Mills, Inc. v. South Carolina Dep't of Revenue,* 331 S.C. 611, 617, 503 S.E.2d 471, 474 (1998) (issue conceded to the trial court cannot be raised on appeal).

### IV.   Burden of Proof under Rule 29, SCRCrimP

Hill further argues the circuit court erred in finding he did not meet the burden of proof under Rule 29(b), SCRCrimP for the grant of a new trial.

■■■ The denial of a new trial will not be reversed absent an abuse of discretion.   *State v. South,* 310 S.C. 504, 507, 427 S.E.2d 666, 668 (1993).   To prevail on a motion for a new trial based on after-discovered evidence, it is necessary to show that the evidence: "(1) would probably change the result if a new trial is had; (2) has been discovered since the trial; (3) could not have been discovered before trial; (4) is material to the issue of guilt or innocence; and (5) is not merely cumulative or impeaching." *Id.* at 507, 427 S.E.2d at 668–69.

Because we reverse and remand on Hill's issue involving Rule 5 and *Brady*, we need not address this issue. *See Mixon*, 275 S.C. at 582, 274 S.E.2d at 409 (comparing relief sought in *Brady* motion to motion for new trial on the ground of after-discovered evidence); *see also State v. Spann*, 334 S.C. 618, 619, 513 S.E.2d 98, 99 (1999) (wherein the Supreme Court, because it reversed and granted a new trial on one issue, did not address other issues raised by appellant).

## CONCLUSION

Based on the foregoing analysis, we find the disclosure rules of *Brady* and Rule 5 are applicable in probation revocation cases. As such, we reverse the circuit court's decision denying Hill access to this information prior to the revocation hearing and remand for a *de novo* revocation hearing. Finally, we affirm Hill's issues regarding 42 U.S.C. § 1983 and Rules 28 and 29 of the South Carolina Rules of Criminal Procedure.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

GOOLSBY and ANDERSON, JJ., concur.