## 2477

The STATE, Respondent v. Elaine C. GULLEDGE, Appellant.

(468 S.E. (2d) 665)

Court of Appeals

*Michael E. Stegner,* Camden; and *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,* and *Senior Assistant Attorney General William Edgar Salter, III,* Columbia; and *Solicitor John R. Justice,* Chester, *for respondent.*

Heard Feb. 8, 1996.

Decided Mar. 4, 1996; Reh. Den. Apr. 18, 1996.

GOOLSBY, Judge:

Elaine C. Gulledge pled guilty to a single count of breach of trust with fraudulent intent of an amount greater than $5,000.00. She stipulated during the sentencing proceedings that she stole $87,999.77 by writing checks to herself on her employer's account; however, the trial court found she had stolen $210,000.00. The trial court sentenced Gulledge to eight years imprisonment but suspended the sentence upon service of three years imprisonment, service of five years probation,

and the payment of restitution at the rate of $3,500.00 a month or $42,000.00 a year for five years, with payment to begin upon her release from prison. Four days after sentencing, the trial court entered a civil judgment against Gulledge in the amount of $210,000.00. Gulledge appeals the trial court's denial of her motion to reduce sentence and restitution and to rescind the civil judgment. We affirm in part and reverse in part.

Gulledge worked for Lancaster Motor Company ("LMC") as its head bookkeeper from 1986 to November, 1991. Customers who owed General Motors Acceptance Corporation ("GMAC") under financing arrangements would come to LMC and make cash payments on their accounts to LMC's cashiers. LMC would give the customers a receipt, deposit the cash into its account, and later write a check to GMAC for the sums received each day. When a person made a payment, two receipts were made, one to GMAC's account and one on LMC's account.

A cash receipts journal, kept by Gulledge from 1986 to November, 1991, was supposed to have kept track of all cash accepted from customers for payment to GMAC. Gulledge controlled the cash that came into LMC's hands, daily totalling the amount of the cash received and posting the cash receipts to LMC's account.

A survey of the company's books that embraced the years 1986 through 1991 indicated a sizeable cash shortage.

## I.

Gulledge first contends the trial court erred in denying her motion pursuant to Rule 5(d)(2), SCRCrimP, to prohibit the prosecution from introducing during the sentencing proceedings evidence concerning shortages in LMC's GMAC account because the prosecution failed to fully comply with requests that she made pursuant to Rule 5, SCRCrimP, and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. (2d) 215 (1963), for access to the LMC records used by the State to establish the shortage in question.

The solicitor provided Gulledge's attorney in advance of the restitution hearing with a copy of a handwritten summary that LMC had prepared and that reflected the amount LMC claimed Gulledge stole from it from 1986 through 1991. The

solicitor, however, did not give Gulledge's attorney either the documents that LMC used to prepare the handwritten summary or copies of those documents. When Gulledge's attorney contacted the solicitor about his not being provided these documents, the solicitor suggested he call LMC's president and "work it out" with him. Counsel then called LMC's president. At the restitution hearing, counsel claimed LMC did not afford him an opportunity to inspect and copy the documents on which the handwritten summary was based.

The trial court ruled the prosecution complied with Rule 5; however, it made no ruling on whether the prosecution also complied with *Brady*.

We cannot fault the trial court's ruling regarding Rule 5. The documents sought by Gulledge, as we read the record, were not "within the possession, custody, or control of the prosecution," as required by Rule 5(a), SCRCrimP, but were in the possession, custody, or control of a third party, namely, LMC. *See United States v. Armstrong*, 621 F. (2d) 951, 954 (9th Cir. 1980) (although Rule 16(a)(1)(C), F.R.Crim.P, "provides for the inspection and photographing of buildings or places which are within the possession, custody or control of the Government, there are no comparable provisions allowing inspection of the property of third parties"); *United States v. Wortman*, 26 F.R.D. 183 (E.D. Ill. 1960), *rev'd on other grounds*, 326 F. (2d) 717 (7th Cir. 1964) (a request for discovery of items seized from and returned to third parties does not come within coverage of Rule 16(a)(1)(C) and (D)). The prosecution supplied Gulledge with the handwritten summary, a document it did possess.

Gulledge's contention regarding purported Brady material is not preserved since the trial court did not rule on the issue. *State v. Woodruff*, 300 S.C. 265, 387 S.E. (2d) 453 (1989); *State v. Gee*, 262 S.C. 373, 204 S.E. (2d) 727 (1974). The trial court expressly ruled only on Gulledge's motion regarding Rule 5. *See Noisette v. Ismail*, 304 S.C. 56, 403 S.E. (2d) 122 (1991) (wherein the supreme court held an issue was not preserved for review by the court of appeals where the trial court did not explicitly rule on the appellant's argument and the appellant made no Rule 59(e), SCRCP motion to alter or amend the judgment).

## II.

Gulledge next contends the trial court erred in allowing the handwritten summary in evidence because the summary constituted hearsay and violated the best evidence rule.

The trial court received the handwritten summary as information during the sentencing proceedings that followed Gulledge's guilty plea. The handwritten summary was prepared, as we noted previously, by LMC from other documents. The other documents were not provided the trial court. Following the hearing, the trial court ordered Gulledge to pay restitution as an express condition of its suspension of a part of Gulledge's sentence. *See* S.C. Code Ann. § 16-3-1530(D)(3) (1985) (statute conferring a right upon a victim to receive restitution for a property loss incurred as the result of a crime and authorizing the trial court to order restitution as a condition of probation when sentencing a person); *id.* §17-25-125 (1985) (statute authorizing a trial court, when sentencing a defendant convicted of a crime involving the unlawful taking of another's property, to order the defendant to make restitution to the victim in an amount equal to the monetary loss sustained by the victim as determined by the trial court); *see also id.* § 17-25-322 (Supp. 1995) (statute mandating a hearing to determine the amount of restitution due a victim when a defendant is convicted of a crime that resulted in the victim's sustaining pecuniary damages or loss).

The handwritten summary was received by the trial court as information during a sentencing proceeding and, as evidenced by the record, was used by the trial court for the purpose of determining the proper sentence to impose upon Gulledge, including the condition of restitution. As in most sentencing proceedings, a trial court "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which [the information] may come." *State v. Franklin*, 267 S.C. 240, 246, 226 S.E. (2d) 896, 898 (1976). A trial court, when sentencing a convicted defendant, exercises, then, a wide discretion regarding the sources and types of evidence it may use to assist it in determining the kind and extent of punishment to be imposed. *State v. Cantrell*, 250 S.E. 376, 158 S.E. (2d) 189 (1967). We see no abuse by the trial

court of that wide discretion when it received and considered the information under challenge, especially since the trial court allowed Gulledge to cross-examine a person who prepared it. *Adamson v. Marianne Fabrics, Inc.*, 301 S.C. 204, 391 S.E (2d) 249 (1990) (the trial court did not abuse its discretion in allowing the plaintiff to testify to summaries of computer printouts to establish commissions he was owed where the defendant was permitted to cross-examine the plaintiff on the accuracy of the summaries); *cf.* Rule 1103(b) and Rule 1101(d)(3), SCRE (although the new South Carolina Rules of Evidence, which became effective September 3, 1995, apply to criminal cases, they are inapplicable to noncapital sentencing proceedings).

### III.

Gulledge also argues the trial court erred in finding she ■ stole in excess of $400,000.00, including the money she admitted to stealing, and in ordering her to pay $210,000.00 in restitution. We disagree.

The evidence clearly supports a finding that Gulledge feloniously took in excess of $400,000.00 from her employer. A presentencing report, which forms part of the record, recited LMC suffered actual losses of $537,084.47. Also, the State showed LMC always paid GMAC by check the exact amount of money LMC actually received from customers. Had persons other than Gulledge been stealing the money before Gulledge got it, Gulledge would have been receiving less money than the customers were paying LMC and LMC's payments to GMAC, which Gulledge made, would have reflected this deficiency. That the payments did not reflect this deficiency convincingly demonstrates Gulledge received all the money the customers paid LMC, paid GMAC the correct amount from LMC's account, but did not deposit all the cash receipts into LMC's account.

### IV.

Gulledge further argues the State did not prove she ■ had the resources to pay $210,000.00 in restitution and the trial court failed to state its findings and the underlying facts and circumstances of them. *See* S.C. Code Ann. § 17-25-322(C) (Supp. 1995) (statute requiring the trial court

to state "its findings and the underlying facts and circumstances" when entering its order following a restitution hearing). Because this argument was neither raised to nor addressed by the trial court, we need not deal with it. *Schofield v. Richland County Sch. Dist.*, 316 S.C. 78, 447 S.E. (2d) 189 (1994).

Gulledge lastly asserts that the trial court erred in entering a civil judgment against her because the restitution payments were not to start until she completed her active sentence and there was a default. We agree. The restitution payments were not to begin until she was released from prison. We therefore reverse the trial court's entry of a civil judgment against Gulledge. *See* S.C. Code Ann. § 17-25-323(B) (Supp. 1995) ("When a defendant has been . . . ordered to make restitution, *and the defendant is in default . . .*, the court . . . must hold a hearing to require the defendant to show cause why his default should not be treated as a civil judgment and a judgment lien attached.") (Emphasis added).

Affirmed in part and reversed in part.

HOWELL, C.J., and HEARN, J., concur.