482 S.E.2d 53

**John Garland FRADELLA, Respondent,**

v.

**TOWN OF MOUNT PLEASANT, Appellant.**

**No. 2615.**

Court of Appeals of South Carolina.

Heard Nov. 7, 1996.

Decided Jan. 13, 1997.

Rehearing Denied March 4, 1997.

470

Mark A. Mason, of the Mason Law Firm, Mount Pleasant; and C. Mac Gibson, Jr., Charleston, for Appellant.

Stacy L. Slotchiver and Mark C. Brandenburg, Charleston, for Respondent.

PER CURIAM:

The Town of Mount Pleasant (Town) appeals the circuit court's reversal of a jury's conviction of John Garland Fradella (Fradella) for driving under the influence, first offense (DUI). We reverse the circuit court.

## I. FACTS

Early in the morning hours of November 19, 1994, Fradella wrecked his vehicle on the Cooper River Bridge near Mount Pleasant. Fradella's car was inoperable and he began walking off the bridge. Another driver, Kenneth Copeland, was travelling across the bridge shortly after the accident. Upon seeing Fradella walking along the side of the bridge, Copeland offered him a ride. Fradella accepted, and Copeland drove

him home. Copeland remained for a few minutes with Fradella, and then drove back to the scene of the accident.

Meanwhile, Sergeant Gragg of the Mount Pleasant Police Department responded to a dispatcher's report of an accident on the bridge. Gragg arrived at about 2:04 a.m. to discover Fradella's car as well as a separate two-car collision on the bridge. The police used the license tag number on Fradella's vehicle to obtain the phone number of the registered owner of the car. The owner gave them Fradella's phone number and told them Fradella was in possession of the car. The police officers then cross-referenced Fradella's number and obtained his address.

While the officers were investigating the accident, Copeland approached officers Gragg and Bolin at the scene and advised them he gave the driver of the abandoned vehicle a ride home. Further, Copeland told the officers that the driver smelled of alcohol, and he agreed to lead the officers to the address where he left Fradella. Meanwhile, the dispatcher informed the officers that Fradella had called 911 to report he was involved in the accident on the bridge. The officers arrived at Fradella's residence approximately twenty minutes after Gragg first responded to the accident. Gragg called Fradella outside to discuss the accident and Fradella readily admitted he was the driver of the wrecked vehicle. Copeland also identified Fradella as the man to whom he had given a ride.

After observing Fradella's bloodshot eyes and the smell of alcohol on his breath, Gragg told Fradella he was under investigation for possible DUI. According to Gragg, when questioned, Fradella initially said he had one beer, but afterwards admitted he had three beers. Gragg then had Fradella perform several field sobriety tests. Gragg did not feel that Fradella completed the tests satisfactorily and was of the opinion that Fradella was "definitely impaired." Bolin substantially concurred in Gragg's assessment of Fradella's performance on the field sobriety tests, and agreed Fradella was impaired. At that time Fradella was arrested for DUI.

A third officer, Officer Gibson, testified that Fradella smelled of alcohol, his eyes were bloodshot, and he slurred his words when Gragg and Bolin brought Fradella to the squad room. Fradella was offered a breathalyzer test but refused.

Fradella was then transported and booked at the Charleston County Jail.

At trial, Copeland testified that while he did tell the police that Fradella smelled of alcohol, on later reflection he believed the smell was coming from a shirt in his truck. Copeland said Fradella was not drunk, his eyes were not bloodshot, and his speech was not slurred. Finally, Copeland testified that Fradella said he wrecked his vehicle while attempting to avoid a motorcycle.

Gragg and Bolin admitted that they did not know exactly when the accident occurred, and that they had no witnesses who saw the accident or saw Fradella driving. However, Bolin testified that Fradella claimed not to have had anything else to drink prior to the time he and Gragg arrived at Fradella's home.

Officer Washington of the Charleston County Detention Center testified as to booking procedures at the Detention Center. He stated that if a prisoner is intoxicated, it is usually noted on the booking report. He had no knowledge of Fradella's condition the night of his arrest.

One of Fradella's roommates at the time of the incident, William Early, testified that Fradella was not drinking when Early saw him at a sports bar that evening. Early was awakened when Copeland brought Fradella home, and Early stated Fradella was panicky but not drunk. Early also stated he would have remembered if Fradella had admitted to the officers that he drank three beers. Early said Fradella performed the various sobriety tests well enough even though the two officers were "tag teaming" him.

Before trial, Gragg, Bolin, and Copeland testified in a hearing on Fradella's motion to dismiss based on lack of probable cause to arrest and Fradella's motion to suppress statements pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). All of the witnesses related substantially the same story to which they testified at trial. However, Gragg stated that before he arrived at Fradella's house, he only had identified Fradella as the driver of the wrecked vehicle, not as a DUI suspect. Gragg believed Fradella had been drinking, though, once Fradella stepped from the house. Gragg stated that he informed Fradella he

was investigating a possible DUI when Fradella stepped from the house, but that Fradella was not in custody and was free to leave. Gragg testified to some of Fradella's statements about drinking as well as the cause of the accident. Bolin testified that he gave Fradella *Miranda* warnings once arrested, and that Fradella said he understood them.

Fradella also testified at the hearing on these motions. Fradella said Gragg told him that "he had to come outside now," and Fradella felt he had no choice but to cooperate with Gragg's directions. Fradella claimed he did not know his statements could be used against him.

The city court excluded as prejudicial some of Fradella's statements, and the judge also excluded as prejudicial testimony about the subsequent accident on the bridge caused by Fradella's abandoned car. However, the city court admitted Fradella's other statements, reasoning that Fradella made the statements when he either was not in custody or was already "mirandized."

A jury convicted Fradella of DUI. However, the circuit court reversed the conviction on appeal, holding that (1) the warrantless arrest of Fradella for a misdemeanor violated the "presence requirement" of S.C.Code Ann. § 17–13–30 (1985), (2) Fradella's statements and the results of field sobriety tests had to be excluded as "fruits of the poisonous tree," and (3) the charge against Fradella had to be dismissed as a sanction for the Town's failure to comply with a discovery request and turn over a photograph and the second page of a booking report from the Charleston County Jail. The Town appeals these rulings and argues that in any event the alleged errors were harmless in light of overwhelming evidence of Fradella's guilt.

## II. "PRESENCE" REQUIREMENT

The Town argues that the circuit court should not have reversed Fradella's conviction because the facts and circumstances surrounding the incident satisfy the requirement that a misdemeanor be committed in an officer's presence in order to justify a warrantless arrest. We agree.

South Carolina Code Ann. § 17–13–30 (1985), states that sheriffs and deputy sheriffs "may arrest without warrant any and all persons who, within [the officers'] view, violate any of

the criminal laws ... if such arrest be made at the time of such violation of law or immediately thereafter." However, in *State v. Martin*, 275 S.C. 141, 268 S.E.2d 105 (1980), the court noted that the rule in § 17–13–30 must be interpreted in light of S.C.Code Ann. § 23–13–60 (1989), which provides that such officers "may for any suspected freshly committed crime, whether upon view or upon prompt information or complaint, arrest without warrant. . . ." Thus, *Martin* holds "an officer can arrest for a misdemeanor [not committed within his presence] when the facts and circumstances *observed by the officer* give him probable cause to believe that a crime has been freshly committed." 275 S.C. at 146, 268 S.E.2d at 107 (emphasis in original). Our Supreme Court has extended the operation of these statutory rules to town policemen. *State v. Clark*, 277 S.C. 333, 287 S.E.2d 143 (1983) (citing *State v. Retford*, 276 S.C. 657, 281 S.E.2d 471 (1981)).

In *Martin*, the officer discovered (1) two cars which obviously appeared to have recently collided, (2) a highly intoxicated man who admitted to being one of the drivers, and (3) a group of people gathered at the scene. 275 S.C. 141, 268 S.E.2d 105. The court held these circumstances sufficient to justify the warrantless arrest. *Id.* A number of subsequent opinions have construed *Martin*. *See Retford*, 276 S.C. 657, 281 S.E.2d 471 (1981) (holding a warrantless arrest justified when (1) the subject fit the description of the perpetrator of a recent auto theft, (2) a witness identified the subject as one who was entering automobiles, and (3) the subject was behaving in a disorderly manner); *State v. Sullivan*, 277 S.C. 35, 282 S.E.2d 838 (1981) (holding that an undercover agent serving as a lookout could arrest subjects without a warrant when he arrived at the drug-laden plane's landing site); *Clark*, 277 S.C. 333, 287 S.E.2d 143 (holding that a warrantless arrest for discharge of a firearm was permissible when (1) officers arrived at the scene shortly after being summoned, (2) officers found the subject armed and an expended shell nearby, and (3) the subject's mother told the officers that the subject had fired the gun). Notably, *State v. Sawyer*, 283 S.C. 127, 322 S.E.2d 449 (1984), held that the defendant's admission that he was the driver satisfied the presence requirement in the breathalyzer statute, because the admission "should be treated

as part of the officer's sensory awareness of the commission of the offense."

Moreover, cases from at least two jurisdictions have held that the defendant's admission that he was driving justified a warrantless arrest for DUI. *See, e.g. State v. Macuk,* 57 N.J. 1, 268 A.2d 1 (1970) (stating that " 'presence' sums up the requirement that the officer know of the event by the use of his senses," and holding that the defendant's admission provided the necessary knowledge that defendant was driving, although the officer first saw the defendant sitting on a porch near the scene of the accident); *Oregon v. Szakovits,* 32 Ohio St.2d 271, 291 N.E.2d 742 (1972) (holding that the defendants' admissions that they were driving justified arrest without a warrant even though the officers did not observe the defendants driving).

■ We agree with the Town that the facts of this case fall within the rule in *Martin.* Here, the officers arrived shortly after being summoned to the scene, and found Fradella's car involved in a single car accident. The officers received information from Copeland who claimed he drove the driver home and reported the driver smelled of alcohol. Copeland identified Fradella as the driver. The officers arrived at Fradella's residence about twenty minutes after they arrived at the scene of the wreck. Importantly, Fradella reported to the dispatcher that he was involved in the accident, and he admitted to the officers and Copeland that he was the driver of the wrecked car. Both officers testified that it was obvious Fradella was impaired after administration of field sobriety tests and their conversation with him. Based on the facts and circumstances observed by these officers within their sensory awareness, we hold they had probable cause to believe Fradella had "freshly committed" the crime of DUI.

■ Fradella argues *Martin* and its progeny are distinguishable because the officers in those cases observed the pertinent facts and circumstances at the scene. We agree that our decision is an extension of *Martin.* However, neither *Martin* nor subsequent cases interpreting *Martin* expressly mandated that the officer observe all of the facts and circumstances at the scene. We believe such a holding would construe *Martin* too narrowly. Therefore, we hold that as

long as the facts and circumstances observed or perceived by an officer justify the conclusion that a crime has been *freshly* committed, then the *Martin* rule is satisfied.

Fradella also argues that *Martin* is inapplicable because Fradella's car was inoperable. We disagree. In *Martin,* the court noted that the special circumstance of preventing the drunk driver from subsequently driving his operable vehicle "dictated that the arrest be immediately made." 275 S.C. at 146, 268 S.E.2d at 107. However, *Martin* also noted the special circumstance of testing for blood alcohol content due to "the dissipating nature" of alcohol in the bloodstream. *Id.* Even though Fradella ultimately refused a breathalyzer test, that special circumstance is still applicable here. Thus, we hold that *Martin* is applicable to the facts of this case.

## III. FRADELLA'S STATEMENTS

The Town argues that Fradella's statements were properly admitted as fruit of a noncustodial interrogation. However, on appeal, the circuit court found that the officers' true reason for going to Fradella's home was to "get around the probable cause/warrant requirement." Consequently, the circuit court based its finding that Fradella's statements should not have been admitted on the rationale that the statements were the fruit of an unlawful warrantless arrest. The circuit court did not consider whether Fradella's statements were admissible as statements obtained from a noncustodial interrogation. In any event, the police found an abandoned car on the bridge which, at a minimum, gave rise to the probability the driver had left the scene of the accident, a possible crime. The police had a duty to investigate the circumstances of the accident. Thus, based on the record before us, we hold that Fradella was not in custody when he made the statements before arrest, and any subsequent statements were admissible because Fradella waived his *Miranda* rights. *State v. Easler,* 322 S.C. 333, 471 S.E.2d 745 (Ct.App. 1996).

Next, the circuit court implicitly found that Fradella's statements were involuntary because they were secured by the artifice of the officers, in that they intended to obtain inculpatory statements under the guise of being concerned about Fradella's welfare. The record before us does not

support that holding. *Cf. Whren v. United States,* — U.S. —, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (holding subjective motives of officers' actions are irrelevant if they otherwise have legal justification for those actions).

## IV. DISMISSAL OF CHARGE FOR DISCOVERY VIOLATIONS

The Town also asserts the circuit court erred in dismissing the DUI charge as a sanction for the Town's violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Rule 5, SCRCrimP. Before trial, Fradella made the following request:

> The defendant respectfully request that the City Prosecutor produce [all items or information] subject to disclosure pursuant to Rule 5 of the South Carolina Rules of Civil Procedure. The defendant further requests the City Prosecutor to produce all evidence favorable to the defendant, subject to disclosure pursuant to *Brady.* . . . This request is a continuing request for all such discoverable information as it becomes known to the City Prosecutor or any Prosecution Agents.

The prosecution turned over the first page of the booking report prepared by the Town's officers, but it did not turn over the second page of the booking report prepared by a Charleston County Sheriff's Deputy when Fradella was transported to the County Jail. Under the line marked "Condition at Time Of Admission," the sheriff's deputy wrote "appears OK." The second page also included photographs taken of Fradella. The prosecutor claimed that the Town had neither knowledge nor possession of the second page. In fact, the city judge stated he knew from his experience that the second page of these reports always remained in the custody of the Charleston County Sheriff's Department. Consequently, the city judge denied Fradella's request for dismissal or sanctions. On appeal, the circuit judge ruled that the failure to turn over the report "materially hindered Fradella's defense," and he found "that the only appropriate remedy" was dismissal of the charge against Fradella.

*Brady* requires the State to disclose to a defendant evidence in its possession favorable to the accused and materi-

al to guilt or punishment. *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); *State v. Nance,* 320 S.C. 501, 466 S.E.2d 349, *cert. denied* —— U.S. ——, 116 S.Ct. 2566, 135 L.Ed.2d 1083 (1996). This rule applies to both impeachment and exculpatory evidence. *State v. Von Dohlen,* 322 S.C. 234, 471 S.E.2d 689, *cert. denied* —— U.S. ——, 117 S.Ct. 402, 136 L.Ed.2d 316 (1996). Impeachment or exculpatory evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* 471 S.E.2d at 693; *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Moreover, "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 109–10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). A defendant shows a *Brady* violation by demonstrating that "favorable evidence could [have been presented] to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).

■ The record shows that the prosecutor of the Town of Mount Pleasant was not cognizant of the second page of the booking report until Fradella's attorney raised the matter at trial. The evening prior to trial, Fradella's counsel received the report and now claims prejudice because he was unable to subpoena to court the officer who actually booked Fradella into jail. He argues that the officer could have testified to Fradella's sobriety.

We hold that the photograph of Fradella and notation "appears OK" on the second page of the booking report do not meet the test for materiality. This notation is minor evidence when compared to the other evidence of Fradella's guilt. That Fradella "appear[ed] OK" more than two hours after arrest might have helped the defense, but the notation does not create a reasonable doubt that did not otherwise exist so as to undermine confidence in the verdict. For similar reasons, we hold that these items were not "material to the preparation of [Fradella's] defense" as required by Rule 5(a)(1)(C), SCRCrimP. *See State v. Gulledge,* 321 S.C. 399, 468 S.E.2d 665 (Ct.App.1996), *cert. granted,* (Oct. 17, 1996) (suggesting

there may be a distinction in the treatment of a request for information under Rule 5(a) and a request under *Brady*, where the information is in the hands of a third party).

## V. CONCLUSION

We hold that Fradella's warrantless arrest was lawful despite the fact that none of the officers witnessed Fradella driving. We further hold that any discovery violations were not material so as to warrant the sanction of dismissing the charge. Thus, we reinstate Fradella's conviction.

**REVERSED.**

CURETON, GOOLSBY and ANDERSON, JJ., concur.