21440

The STATE, Respondent, v. Michael GOODSON, Appellant.

(277 S. E. (2d) 602)

*Warren & Pitts,* Montreat, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Atty. Gen. Sally G. Young,* Columbia, and *Sol. Randolph Murdaugh, Jr.,* Hampton, *for respondent.*

April 23, 1981.

HARWELL, Justice:

Michael Goodson appeals the decision of the trial judge which denies him a new trial. He was convicted for housebreaking, grand larceny and safecracking at the Allendale branch office of the State Highway Department.

This Court has previously heard this matter.[1] We affirmed the trial judge in part but remanded the case with the direction that the trial judge reconsider appellant's *Brady v. Maryland*[2] motion in light of the United States Supreme Court's decision in *United States v. Agurs,* 427 U. S. 97, 96 S. Ct. 2392, 49 L. Ed. (2d) 342 (1976). We set forth the matter for remand as follows:

"Prior to trial, counsel made a Brady motion for any favorable evidence including any physical evidence or test results which could be beneficial to his client. The solicitor said that he had no exculpatory evidence other than a statement of which appellant had a copy.

"During the trial, prosecution witnesses referred to the existence of certain evidence which appellant had not seen and which was never offered for introduction. After the jury returned its verdict in this case, appellant moved for the trial judge to request the evidence at issue and examine it with him to see whether it would support a motion for a new trial. He also asked that this material be attached to the record for this appeal. The trial judge denied appellant's requests and appeared to find that the evidence would not change the results of the trial.

"*U. S. v. Agurs,* 427 U. S. 97, 96 S. Ct. 2392, 49 L. Ed. (2d) 342 (1976) indicates that evidence that is not produced pursuant to a general request for exculpatory material, such as that made here, will not justify a new trial

---

[1] *State v. Goodson,* 273 S. C. 264, 255 S. E. (2d) 679 (1979).
[2] 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed. (2d) 215 (1963).

unless it creates a reasonable doubt about the defendant's guilt. The trial judge does not appear to have applied this standard here. Thus, this case is remanded to him for the purpose of his evaluating the evidence at issue here in light of *Agurs.*" 255 S. E. (2d) at 680.

On remand the trial judge took testimony relative to appellant's proffered evidence, viewed the physical evidence and heard the able arguments of counsel for both sides. The judge concluded, however, that no reasonable doubt about appellant's guilt was created. We disagree.

The standard of review as established in *Agurs* makes clear that not every instance of nondisclosure following a general *Brady* request constitutes reversible error.

"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." 427 U. S. at 112-113, 96 S. Ct. at 2401-02.

As is to be readily noted from the language in *Agurs,* each case turns upon the strength of the evidence presented in the context of the entire record before the court. The court on review is given a delicate task. We must review the evidence but we do not at this stage pass upon the sufficiency of that evidence. The fact finder must establish the doubt in fact. Here we only determine whether the appellant's right to a fair trial has been impaired and if so direct a retrial of the matter.

In this case the Highway Department office in Allendale was broken into. Among the items taken were inspection stickers, license plates and the camera used to photograph licensees and to simultaneously create driver's license impressions. Appellant was subsequently apprehended and found to be in possession of these items. He confessed to receiving stolen goods only. Appellant contends that his brother broke into the building and took the items; he claims no prior knowledge of the incident.

The testimony reveals that appellant and David Goodson, appellant's then 17 year old brother, drove from Columbia to Allendale on the date of the crime, ostensibly to enable David to meet appellant's wife. She was not home so the brothers spent most of the day at the wife's residence. From here the story develops two versions.

Appellant states that David became restless and went out for awhile, returned, and then borrowed appellant's automobile. When David returned that night, he allegedly had the items from the highway office with him.

David's account traces that of his brother but he states that the appellant, not he, took the car and returned after nightfall with the stolen goods. David also states that appellant had earlier spoken of having "something big" planned.

David denied having any prior knowledge of the criminal events at issue. Only David directly implicated the appellant in these crimes. Thus, appellant's conviction turned primarily upon the credibility of David.

Among the items recovered from the appellant was a roll of film within the highway department camera. This roll has six "film report" exposures which identify the office of origin. There are then eleven standard licensee photo-make-ups. Immediately following the last licensee exposure there is an exposure, of inferior quality, of David Goodson. There

are then in sequence three largely blank, exposed frames and seven exposures of a setting within a building. This roll of film was not disclosed to appellant at trial. The appellant contends that the last exposures show objects within the department office and that David therefore had to be there. The State argues that the exposure starting with that of David were made elsewhere after the break-in.

At the remand hearing, counsel for appellant attempted strenuously to establish that the latter exposures were made at the department office. Several employees were called in an effort to have them identify what they could in prints developed from the film. Their testimony proved inconclusive. They simply did not know where the exposures were made. The trial judge found that the exposures could not have been made at the department office given the dramatic difference in quality of the exposures and the content within them. We note however that at least one employee identified what she thought was a portion of scales as reproduced in a blow-up of an exposure. She recognized that it apparently had a State Agriculture Department seal on it. She also stated that scales such as the set reproduced were used in her office. Another employee confirmed that there was a set of scales at the department office in the maintenance shop. We also note that in the photograph produced from the exposure of David Goodson there is a green object behind him which could be a green chalkboard or even a green screen of some type. An employee testified at the remand hearing that there was a green screen at the office.

While we are not persuaded that this evidence necessarily exculpates appellant, we find that sufficient question has been cast upon conclusions reached in the trial below to justify a reconsideration of the matter by a jury appraised of these new factors.

David Goodson was the only witness the State had to implicate the appellant. He supposedly had no prior knowl-

edge of the criminal activity. He gave a statement to that effect. The film possibly casts serious doubt on David Goodson's credibility as a witness. It could corroborate the appellant's version of the facts. At the least, its existence, never mentioned in David's statement or testimony at the trial, would provide the appellant an opportunity to challenge the believability of the State's main witness.

Other non-disclosed evidence was alleged by appellant to be exculpatory. We have carefully considered this evidence and agree with the trial judge that non-disclosure of the other evidence was not a violation of *Brady* since it is irrelevant on the question of appellant's guilt or innocence. This evidence clearly does not attain the *Agurs* "reasonable doubt" standard.

Reversed and remanded for a new trial.

LEWIS, C. J., and LITTLEJOHN and GREGORY, JJ., concur.

NESS, J., dissents.

NESS, Justice (dissenting):

I respectfully dissent, concluding the State's failure to disclose the existence of the roll of film did not deprive the appellant of a fair trial. *Brady v. Maryland,* 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed. (2d) 215 (1963); and *United States v. Agurs,* 427 U. S. 97, 96 S. Ct. 2392, 49 L. Ed. (2d) 342 (1976).

It is utterly ridiculous to contend that the defendant, David Goodson, had his picture taken inside the Highway Department while he was robbing it. Although the roll of film may inculpate someone other than the appellant in the crime, it does not exculpate him.

The failure to disclose information constitutes reversible error only if "the omission deprives the defendant of a fair trial." *Agurs, supra; State v. Gambrell,* S. C., 266 S. E.

(2d) 78 (1980). I fail to see how the omitted information creates a "reasonable doubt concerning appellant's guilt" in this case. *State v. Goodson*, 273 S. C. 264, 265, 255 S. E. (2d) 679, 680 (1979). The trial judge held, and I agree, this evidence was not exculpatory. I would affirm the conviction.

Affirmed.