595 S.E.2d 480

**The STATE, Petitioner,**

v.

**Duncan PROCTOR, Respondent.**

No. 25810.

Supreme Court of South Carolina.

Heard Dec. 4, 2003.

Decided April 19, 2004.

---

426

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney General Deborah R.J. Shupe, all of Columbia, and Solicitor Ralph E. Hoisington, of Charleston, for Petitioner.

Chief Attorney Daniel T. Stacey, of the Office of Appellate Defense, of Columbia, and Christopher W. Adams, of Atlanta, for Respondent.

Justice PLEICONES.

We granted certiorari to review a Court of Appeals' decision remanding respondent's appeal to the circuit court with instructions to hold a hearing and determine whether information not disclosed by the State was material to the defense. *State v. Proctor*, 348 S.C. 322, 559 S.E.2d 318 (Ct.App.2001). Because we hold that there is no reasonable possibility that, had the information sought been disclosed, the result of respondent's trial would have been different, we reverse the Court of Appeals.[1]

## FACTS

Respondent was convicted of one count of burglary and four counts of first degree criminal sexual conduct arising out of an unlawful entry into the victim's (G's) home and sexual assaults perpetrated upon her in that home.

The State proposed to introduce DNA test results linking respondent to semen recovered from G. The DNA evidence had been processed at the South Carolina Law Enforcement Division (SLED) lab. Respondent sought to discover SLED's internal DNA proficiency test results in order to explore the possibility of challenging the accuracy of the lab's assessments.[2] SLED conducts both 'blind' and 'open' tests; the lab analyst is aware of the test in the 'open' situation but not in the 'blind.'

---

1. We granted certiorari to review a Court of Appeals' decision granting respondent the same relief with regard to his convictions in Dorchester County. *State v. Proctor*, 347 S.C. 587, 556 S.E.2d 418 (Ct.App.2001). In an opinion filed today, we reverse that decision as well. *State v. Procter*, 358 S.C. 417, 595 S.E.2d 476, 2003 WL 23414014 (2004).

2. Proficiency tests determine how accurately an analyst applies validated technology; their purpose is to determine what difficulties a particular examiner may encounter when applying specific methods. Edward J. Imwinkelried, *DNA Typing: Emerging or Neglected Issues*, 76 Wash. L.Rev. 413, 459 (2001).

In response to respondent's request for the proficiency test information, SLED produced an affidavit from SLED Lt. Ira Jeffcoat that outlined the general test procedures, and stated that the SLED examiners have never made an incorrect 'match' in any proficiency test. At a pretrial hearing,[3] the trial judge denied respondent's discovery request, finding respondent failed to show how the proficiency testing information sought would be relevant and material.

## ISSUE

Did the Court of Appeals err in remanding
this matter to the trial court?

## ANALYSIS

As we understand respondent's argument, he seeks the proficiency test results not to attack the methodology used or results obtained in his particular case, but as the predicate for his expert to derive the SLED DNA lab's 'lab error rate.' In turn, respondent's expert would use that rate to evaluate the accuracy of SLED's probability estimates. In this case, for example, Lt. Jeffcoat's written report states that the probability of an individual unrelated to the donor matching the DNA obtained from semen evidence was "approximately 1 in 10,000 CAUCASIANS and 1 in 3,700 BLACKS."[4] Further, if SLED's proficiency test results were not perfect, as represented by Lt. Jeffcoat, then they could potentially be used as impeachment evidence.

Respondent contends he is entitled to another hearing to determine whether the proficiency test results are material under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),[5] and/or Rule 5(a)(1)(D), SCRCrimP.[6]

---

3. The pretrial hearing combined respondent's requests made in this case with his requests made in the Dorchester County case. A single order was issued addressing both requests. Accordingly, our analysis here mirrors that in our Dorchester opinion.

4. Respondent is of mixed Caucasian and African heritage.

5. "[T]he suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment...." *Brady*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215, 218.

The materiality test is the same under *Brady* and under the rule. *State v. Kennerly*, 331 S.C. 442, 503 S.E.2d 214 (Ct.App. 1998), *aff'd*, 337 S.C. 617, 524 S.E.2d 837 (1999). Evidence is material under *Brady* if there is a reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different. *State v. Von Dohlen*, 322 S.C. 234, 471 S.E.2d 689 (1996). Impeachment evidence, as well as evidence that is relevant to guilt or punishment, can be material. *Id.*

The Court of Appeals found "the undisclosed proficiency test results could very well be material to [respondent's] case for impeachment and important for cross-examination purposes" and remanded so that a circuit court judge could reconsider whether to order disclosure of the test results. While we agree that respondent's original pretrial hearing was flawed, we find no error warranting a remand.

■ Where a defendant makes a threshold showing that the evidence he seeks is material within the meaning of *Brady* and Rule 5, the trial judge should conduct a hearing. *State v. Bryant*, 307 S.C. 458, 415 S.E.2d 806 (1992). Here, respondent made that showing. He presented evidence that defense experts examining proficiency tests from other labs have found errors that demonstrated flaws in the test lab's methodology. Further, he presented evidence that no DNA lab has a "zero error rate" on DNA proficiency exams. Having met this threshold requirement, the trial judge should have examined the material *in camera*.[7] The trial judge's reliance on Lt.

---

6. "[U]pon request ... the prosecution shall permit the defendant to inspect and copy any results or reports of ... scientific tests or experiments ... which are material to preparation of the defense...." Rule 5(a)(1)(D), SCRCrimP.

7. At oral argument, the State contended that the raw material respondent sought would be meaningless to the trial judge unless he hired his own expert to assist him. We assume that, in addition to the raw data, the materials would include a summary of the results that would not require expert interpretation. Further, the State acknowledged at respondent's pretrial hearing that it had, in fact, given this type of information to a circuit court judge in another case. We are not prepared to say that the State can arbitrate whether scientific information is too sophisticated for the average trial judge. Further, Lt. Jeffcoat referred to the proficiency testing several times in his testimony establishing the *bona fides* of the SLED DNA lab. So long as the State

Jeffcoat's affidavit in lieu of conducting his own *in camera* examination was error. *State v. Bryant, supra* (error for trial judge to rely on ·State's witness's representation of contents rather than personally inspect materials).

 Although we conclude that respondent made an adequate threshold showing entitling him to a full *Bryant* hearing, we find that error does not require remand:

> For *Brady* purposes, in determining the materiality of nondisclosed evidence, an appellate court must consider the evidence in the context of the entire record. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). However, the court should not consider the sufficiency of the evidence. The court's function is to determine whether the appellant's right to a fair trial has been impaired. *State v. Osborne*, 291 S.C. 265, 353 S.E.2d 276 (1987); *State v. Goodson*, 276 S.C. 243, 277 S.E.2d 602 (1981).
>
> *State v. Taylor*, 333 S.C. 159, 177, 508 S.E.2d 870, 879 (1998).

For purposes of determining whether respondent was denied a fair trial, we will assume that the undisclosed proficiency tests would have revealed that the SLED DNA lab did not, in fact, have a perfect record. We proceed to consider not just the evidence against respondent at trial, but the context in which the DNA evidence was presented.

While G was unable to make a positive identification, her description of her attacker's physical attributes (height, build, hair color, hair texture) match respondent's. Further, hair evidence recovered from the scene was consistent with respondent's, and blood evidence showed the rapist was a Group B secretor, as is respondent. This trait is shared by 9% of whites and 16% of African–Americans. Finally, fingerprints identified as respondent's were found on a window screen at the victim's house at the point of entry, and on a tube of K–Y jelly handled by her attacker. The non-DNA evidence point-

---

relies upon these results to bolster the lab's credibility, it should not be surprised that defense counsel will seek to look behind its representations.

ing to respondent as the perpetrator of these offenses was substantial.

At trial, Lt. Jeffcoat testified that the SLED DNA lab used proficiency testing to ensure its analysts were accurate. He was permitted to testify, over respondent's objection, "In every occasion where we have been provided proficiency tests, we've always called the correct match." Assuming that the proficiency test results would have shown this statement to be untrue, Lt. Jeffcoat could have been impeached by those results. While the lieutenant went on to testify that in this particular case, the lab had been able to match four of five probes from samples recovered from the scene to samples given by respondent, the witness did not testify to the probabilities of such a match occurring in a random population sample. Accordingly, to the extent that respondent sought the proficiency test results in order to calculate the 'lab error rate' and then use that rate to discount the probability match, he cannot demonstrate prejudice from the denial of that information since no 'match' evidence was presented to the jury.

## CONCLUSION

Respondent made the threshold showing entitling him to a *Bryant* hearing and an *in camera* inspection by the trial judge of the proficiency test results. We assume those results would have reflected adversely on the SLED DNA lab's performance, and that Lt. Jeffcoat could have been impeached on his statement that the lab was always correct. We hold, however, that respondent has not demonstrated that he was denied a fair trial. *State v. Taylor, supra.* We therefore reverse the decision of the Court of Appeals remanding the matter for further proceedings.

REVERSED.

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.